## CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF BALTIMORE CITY *v.* MURRAY

[No. 39, October Term, 1951.]

528

*Decided December 6, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*R. Dorsey Watkins*, with whom were *Piper, Watkins, Avirett & Egerton* on the brief, for the appellant.

*Frank L. Fuller, III*, with whom were *Cornelius P. Mundy* and *Marshall, Carey, Doub & Munday* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit for breach of contract was brought by Edward T. Murray against the Chesapeake and Potomac Telephone Company of Baltimore City to recover damages for his discharge from employment as a salesman of telephone directories.

The contract, which was oral, was made in 1926. Prior to that time the only telephone directories which defendant issued listed subscribers alphabetically. Other Bell Telephone companies having been successfully issuing street address directories in New York, Philadelphia and Pittsburgh, defendant decided to compile and publish a Baltimore directory in that form. Plaintiff was employed as one of the directory salesmen. He had been selling directories in Baltimore and Washington for the Crisscross Company. In 1926 that company discontinued its work in Baltimore and Washington, but

continued to publish directories in Detroit, Buffalo, Rochester, Toledo, Columbus and Battle Creek.

After entering the employ of defendant, plaintiff sold 113 directories to 87 of his old Crisscross customers. As his earnings were not large, he later accepted the suggestion of defendant's director of advertising that he use some of his time in soliciting advertisements for the yellow pages in the directory. He continued as one of defendant's salesmen for 23 years. In 1949 defendant decided to change its methods of compiling and selling its street address directories. It decided to delegate the work of soliciting advertisements to an advertising agency, and to handle the sale of directories itself without the aid of commission salesmen. When plaintiff was notified of the new plans, he expressed the hope that he might be allowed to continue to sell to his own customers, but he was informed that thenceforward the sale of all directories would be entirely "a company operation."

Plaintiff testified that he was employed in 1926 by Randolph K. Wheat, directory sales manager, now assistant vice president of the telephone company. He asserted that Wheat promised him that the company would pay him a commission of 20 per cent on all street address directories that he sold as long as the company continued in the street address directory business. He claimed that he was assured that he would be employed for life and that the company would not terminate his employment.

On the contrary, Wheat testified that he had never employed plaintiff on a lifetime basis. He stated definitely that plaintiff had been employed on exactly the same terms as all other salesmen. He disclosed that he had never been authorized to make a contract on behalf of the company for life employment, and that he had never made any such contract in his entire career. Francis S. Whitman, the company's directory manager, now retired, testified that he had never authorized Wheat to employ a salesman on a lifetime basis, and that he had never possessed any such authority himself.

The trial judge overruled defendant's motion for a directed verdict, and the jury awarded plaintiff $6,411.50. After a motion for judgment n. o. v. was overruled, judgment was entered on the jury's verdict. Defendant thereupon appealed to this Court.

We have announced the rule that a general manager or a managing agent of a corporation ordinarily has implied authority to hire employees when the employment is usual and necessary and within the scope of the corporate purposes. *Atholwood Development Co. v. Houston,* 179 Md. 441, 445, 19 A. 2d 706. But it is also accepted that an officer of a corporation ordinarily has no implied authority to bind it by a contract of employment for life. The law contemplates the right of stockholders to change the management of the affairs of their corporation periodically by providing for the election of a board of directors. If corporate officers could enter into contracts giving persons of their selection employment for life, the directors might be deprived of their authority. To justify the Court in finding such an employment, there must be proof that there was definite authority, by by-law, action by the board of directors, or otherwise, to make such a contract. Accordingly, when an employee of a corporation claims that he has been employed on a lifetime basis, he must show either (1) that the officer who made the contract of employment acted on behalf of the corporation with authority for that purpose, or (2) that the contract was ratified by the corporation or its fruits were accepted with full knowledge of the circumstances of their acquisition. *Heaman v. E. N. Rowell Co.,* 261 N. Y. 229, 185 N. E. 83; *General Paint Corporation v. Kramer,* 10 Cir., 57 F. 2d 698, 703; 2 *Fletcher, Private Corporations, Perm. Ed.,* sec. 677.

Even the president of a corporation ordinarily does not possess authority to hire employees for life. In *Carney v. New York Life Insurance Co.,* 162 N. Y. 453, 57 N. E. 78, 79, 49 L. R. A. 471, the Court held that, although the by-laws of the insurance company author-

ized the president to appoint, remove, and fix the compensation of every person employed by the company, a contract made by the president to employ the plaintiff for the rest of his life in a medical capacity was not within the president's authority. The Court ruled that the contract was not contemplated by the by-laws and was unreasonable, because "the hands of the future officers should not be tied, or their action unreasonably hampered." Likewise in *Rennie v. Mutual Life Insurance Co. of New York,* 1 Cir., 176 F. 202, 204, 206, where the by-laws of the company gave the president "the general direction and superintendence of the affairs and of the officers of the company," the Court held that he was not vested with authority to make a contract with a general agent binding the company after the termination of his agency to pay him a certain sum annually during the remainder of his life, and consequently such a contract was not enforcable in the absence of ratification by the company or a course of dealing from which the authority of the president could be inferred.

In the case at bar there was no evidence that the directory sales manager had ever been authorized to bind the defendant corporation by a contract for life employment. On the contrary, he declared that he had never possessed such authority. In addition, there was no evidence that the board of directors of the corporation had ever ratified the alleged contract for life employment. Plaintiff based his claim upon an alleged oral promise of the directory sales manager. If plaintiff had proved the alleged promise without ratification by the board of directors, he would still have failed to establish a cause of action. He would have shown merely an unauthorized contract of employment which was unenforceable against the corporation.

Planitiff now claims that there was sufficient consideration in addition to the services incident to the employment to bind the defendant corporation to a contract for life employment. He claims that the Crisscross Company offered to employ him as a salesman in

Detroit, where the company had been selling about 1,300 directories a year for a total of about $30,000, and his commissions thereon at 25 per cent would have amounted to about $7,500 a year, and that the company also offered to give him permission to sell directories in Buffalo, Rochester, Toledo and Battle Creek, where he could earn $7,500 more. Thus he claims that he was offered a $15,000 job, but that he turned it down in order to work for the telephone company. He further claims that when he entered the employ of the telephone company, he had more experience than the other salesmen in selling directories, and that he also had the benefit of a substantial list of customers.

We assume, without deciding, that where an employee has given consideration in addition to the services incident to the employment, a contract for permanent or life employment is valid and continues to operate as long as the employer remains in the business and has work for the employee and the employee is able and willing to do his work satisfactorily and does not give good cause for his discharge. If the employee has purchased permanent or life employment for a valuable consideration additional to the services which he has contracted to render, a discharge without good cause may constitute a breach of contract. *Dugan v. Anderson,* 36 Md. 567, 585, 11 Am. Rep. 509; *Fisher v. John L. Roper Lumber Co.,* 183 N. C. 485, 111 S. E. 857, 35 A. L. R. 1417; *Rape v. Mobile & Ohio R. Co.,* 136 Miss. 38, 100 So. 585, 35 A. L. R. 1422; *Eilen v. Tappin's, Inc.,* 16 N. J. Super. 53, 83 A. 2d 817; 35 Am. Jur., *Master and Servant,* sec. 25.

However, the mere giving up of a job, business or profession by one who decides to accept a contract for alleged life employment is but an incident necessary on his part to place himself in a position to accept and perform the contract, and is not consideration for a contract of life employment. *Adolph v. Cookware Co. of America,* 283 Mich. 561, 278 N. W. 687, 689; *Edwards v. Kentucky Utilities Co.,* 286 Ky. 341, 150 S. W. 2d 916, 135 A. L. R. 642.

*Carnig v. Carr,* 167 Mass. 544, 46 N. E. 117, 35 L. R. A. 512; was cited in support of the view that the giving up of another employment constitutes a consideration for permanent or life employment. In that case the plaintiff was a competitor of the defendant, and the defendant for his own advantage persuaded the plaintiff to give up his business and sell his stock in trade to him. As a consideration for entering into the arrangement, the defendant agreed to employ the plaintiff at a stated salary. It is clear that what defendant sought and accomplished was to get rid of his competitor in business upon a promise to give plaintiff permanent employment. The situation amounted to the same effect as if plaintiff had purchased his job. Under such circumstances the exception to the general rule was properly applied.

Many courts in this country have held that a contract by which a corporation, in consideration of the release of a claim against it for damages, agrees to give the claimant permanent employment, is valid and enforceable, and is equivalent to life employment or employment for such length of time as the employer has work which the employee is able and willing to perform in a satisfactory manner. *Kirkley v. F. H. Roberts Co.,* 268 Mass. 246, 167 N. E. 289; *Littell v. Evening Star Newspaper Co.,* 73 App. D. C. 409, 120 F. 2d 36; *Riefkin v. E. I. Du Pont de Nemours & Co.,* 53 App. D. C. 311, 290 F. 286; *Rhoades v. Chesapeake & Ohio R. Co.,* 49 W. Va. 494, 39 S. E. 209, 55 L. R. A. 170; *Pennsylvania Co. v. Dolan,* 6 Ind. App. 109, 32 N. E. 802; *F. S. Royster Guano Co. v. Hall,* 4 Cir., 68 F. 2d 533; *Pierce v. Tennessee Coal, Iron & R. Co.,* 173 U. S. 1, 19 S. Ct. 335, 43 L. Ed. 591. Of course, such a contract, though not required to be in writing, is not enforceable unless it definitely stipulates the terms as to work and salary. *Heckler v. Baltimore & Ohio R. Co.,* 167 Md. 226, 173 A. 12; *Baltimore & Ohio R. Co. v. King,* 168 Md. 142, 176 A. 626. But it has been held that where an injured employee is induced to sign a release of his claim for

damages on condition that he be given permanent employment, and the contract is clear and definite, the employer is estopped to deny the authority of the officer who made the promise, on the equitable principle that an employer should not retain the advantage or benefit arising from the promise and at the same time deny the authority of the officer who made it. *Starr v. Superheater Co.*, 7 Cir., 102 F. 2d 170, 176.

In the instant case there was no evidence of independent consideration to bind the defendant corporation to a contract of life employment. It is true that plaintiff testified that Wheat and Whitman told him that he would be employed for life, and that the company would pay him 20 per cent commission on sales of the directories as long as the company continued in the street address directory business. But Wheat testified that he told plaintiff that he could not discuss hiring him as a salesman as long as he was employed by the Crisscross Company, and some time later plaintiff returned and told him that the Crisscross Company was going out of business, and he would like to sell directories for the telephone company. Wheat then testified: "I told him what the commission rate would be and what we would charge for the directory and the conditions under which we would lease it, and the upshot of that was that he decided to come with us, and inasmuch as he had been selling the Crisscross people he said he had a list of accounts. I didn't see it—to this day I haven't seen the list of his accounts—but I told him that I thought it was only fair that he should have an opportunity to canvass his street address customers before the book was thrown open to the sales force."

In interpreting a contract, the court considers the language employed, the subject matter and the surrounding circumstances, and places itself in the same situation as the parties who made the contract. *Sorensen v. J. H. Lawrence Co.*, 197 Md. 331, 336, 79 A. 2d 382, 385. However, where a contract provides that one party shall act as agent for another, or shall have sales rights within

a certain territory, but does not prescribe any conditions which shall determine the duration of the relation, the contract usually may be terminated by either party at will. *Machen v. Budd Wheel Co.*, 294 Pa. 69, 143 A. 482; *Slonaker v. P. G. Publishing Co.*, 338 Pa. 292, 13 A. 2d 48; *Lucacher v. Kerson*, 158 Pa. Super. 437, 45 A. 2d 245; *Willcox & Gibbs Sewing-Machine Co. v. Ewing*, 141 U. S. 627, 12 S. Ct. 94, 35 L. Ed. 882. In this case defendant had the right to discharge plaintiff in March, 1949, since he had completed his sales of the November, 1948, directory and had been paid his commissions, and had not done any work on the November, 1949, directory.

Plaintiff finally urges that, even though the directory sales manager had no authority to enter into a contract for life employment, and defendant had the right to terminate his employment in March, 1949, he should at least be allowed commissions on all sales which defendant has made to his customers since his discharge and which it may make to them in the future. The question whether a salesman, employed under a particular contract providing for commissions based upon amounts collected, is entitled to commissions on collections made after termination of his employment or discharge for cause, where the collections arise out of business secured during the term, is dependent almost entirely upon the language of the contract and the construction to be given thereto. Thus, in *Home News v. Goodman*, 182 Md. 585, 35 A. 2d 442, where the defendant company and two individuals had agreed to pay commissions to the plaintiff on all advertisements which he obtained for a shopping newspaper, the Court held that, while the plaintiff was entitled to commissions on advertisements received after his discharge under options which he had obtained and which were still in effect, he was not entitled to commissions on renewal business obtained after his discharge, even though the business of such advertisers had been originally obtained by him. The corporate defendant was a "two-man corporation," while the individual defendants, who were partners in the printing

business, were the principal defendants; and no question was raised as to the authority of an agent to make such a contract.

In that case we relied heavily on *Scott v. Engineering News Publishing Co.*, 47 App. Div. 558, 62 N. Y. S. 609, 610. There the Court decided that an agreement that the plaintiff should receive a certain per cent on all advertisements obtained by him for the defendant's periodical, "and also on all business that followed the original contracts," did not give the plaintiff any right to commissions on advertisements received by the defendant after his discharge from customers whom he had originally obtained. The Court found that the defendant had agreed to pay the plaintiff commissions on business that followed his original contracts because it was understood that he would keep his customers in touch with the defendant and help in securing renewals. The Court then said: "The customers were his while the employment lasted, but they were not his when they chose to contract directly with the defendant after his connection with the latter had ceased. The new contracts which these customers made with the defendant, after the plaintiff's discharge, were independent of those made during the period of his employment. In no just sense did they cover business which followed the original contracts. They covered business which came to the defendant upon a new status, and under the influence of fresh considerations."

In the contract before us we find no intention on the part of the defendant corporation to give plaintiff a perpetual right to commissions on all sales of directories made by the corporation to any of his customers, even if there was any authority to make such a contract. This contract is distinguishable from a contract of an insurance company and its agent wherein there is an express provision for continuance of commissions upon renewal premiums after termination of the agent's employment. In such a case the contract is enforced without regard to whether termination of the employment is

caused by resignation or by discharge of the agent. 4 *Williston on Contracts,* Rev. Ed., sec. 1030.

It may seem harsh to plaintiff to be deprived of the right to sell the directories after he has been selling them for 23 years. Many of his customers bought directories from him year after year without any need for salesmanship. In many cases he received his commissions for doing little more than delivering the directories. But the mere fact that he has been receiving these commissions without being required to work for them very strenuously does not vest in him the right to continue as defendant's agent for the remainder of his life. It is axiomatic that a principal has the right to revoke the authority which he has given to his agent at his own pleasure, for, since the authority is conferred by his mere will and is to be executed for his own benefit and his own purposes, the agent cannot insist upon acting when the principal no longer desires his aid.

Here the sales made by defendant since plaintiff was discharged in March, 1949, have been independent of the sales which plaintiff had made. The sales made by defendant have been on a new basis and for new considerations. Plaintiff admitted that he had been paid all of his commissions for sales of the November, 1948, directory. He admitted that he did not do any servicing except to sell and deliver the directories. Consequently there was no evidence that he was entitled to any further compensation. For these reasons the case should have been withdrawn from the jury. The judgment in favor of plaintiff must therefore be reversed.

*Judgment reversed without a new trial,*
*with costs.*