John DOW, Plaintiff,

v.

SHOE CORPORATION OF AMERICA, Mid-States Shoe Co., and Mid-States Shoe Co., d/b/a The House of Crosby Square, Defendants.

Civ. A. No. 2568.

United States District Court
S. D. Illinois, S. D.

Sept. 16, 1959.

Barber & Barber, Springfield, Ill., and Wall & Ulbrich, Bloomington, Ill., for plaintiff.

Heyl, Royster & Voelker, Peoria, Ill., for defendants.

POOS, District Judge.

This cause was previously submitted to the Court upon the original complaint which complaint the Court held failed to state a cause of action. Thereupon the plaintiff, John Dow, filed an amended complaint in which the complaint, by Count III, alleged that at all times hereinafter mentioned defendant, Mid-States Shoe Company, was and is now a corporation organized and operating under the laws of the State of Wisconsin, doing business as the House of Crosby Square; that Mid-States Shoe Company is engaged primarily in the advertising, promotion and sale of shoes; that plaintiff, John Dow, was employed by defendant, Mid-States Shoe Company, and its predecessor, Walter Booth Shoe Company, as a salesman for a period of approximately 22 years until said employment was terminated by said Mid-States Shoe Company on or about September 30, 1957; that prior to entering into said employment plaintiff had been engaged in the manufacture of shoes with The Florsheim Shoe Company in Chicago, Illinois, and other shoe manufacturers for a period of approximately six years, and thereafter and immediately preceding said employment with Walter

Booth Shoe Company plaintiff had been engaged as a shoe salesman with the St. Louis Shoe Manufacturing Company for approximately seven years; that on or about January 10, 1935 at Milwaukee, Wisconsin, and during the existence of plaintiff's prior employment as a salesman as above set forth, and well knowing of such employment and of plaintiff's experience in the shoe business as a manufacturer and salesman, and desiring to avail itself of plaintiff's services and to gain the benefit of plaintiff's knowledge, ability, experience, good name and reputation in the shoe business, and also desiring to deprive its competitors of plaintiff's valuable services:

(a) Said employer, Walter Booth Shoe Company, agreed orally with plaintiff to employ plaintiff as a salesman for life on a 6% commission basis, and plaintiff agreed thereto or in the alternative,

(b) Said employer, Walter Booth Shoe Company, further desiring to establish relatively new territory in the State of Illinois as a market for its shoes, agreed orally with plaintiff to employ plaintiff as a salesman for life in said territory on a 6% commission basis, provided plaintiff increase the amount of said employer's sales in said territory, and plaintiff agreed thereto and fully performed said provision, or in the alternative,

(c) Said Walter Booth Shoe Company agreed orally with plaintiff to employ plaintiff as a salesman for life on a 6% commission basis provided plaintiff confine his sales to said employer's shoes, and plaintiff agreed thereto and fully performed said provision, or in the alternative,

(d) Said Walter Booth Shoe Company agreed orally with plaintiff to employ plaintiff as a salesman for life on a 6% commission basis provided plaintiff pay his own sales expenses, including travel, board and room expenses as well as promotion and advertising expenses, and plaintiff agreed thereto and fully performed said provision; that said employment contract as above set forth was entered into for and on behalf of said Walter Booth Shoe Company by and through its duly authorized agent and employee, Harold Leiser, its then sales manager, acting within the scope of his employment, or in the alternative, purporting to act within the scope of his employment which employment contract was ratified and affirmed by said Walter Booth Shoe Company, and thereafter was assumed or ratified and affirmed by defendant, Mid-States Shoe Company; that in reliance upon said contract and pursuant thereto plaintiff relinquished his position with the St. Louis Shoe Manufacturing Company as a salesman, and commenced his employment for said Walter Booth Shoe Company on or about January 10, 1935, and devoted all his energy, knowledge, talent and skill thereto, and by so doing and by expending his own funds and monies for expenses and advertising, and promoting the sale of said employer's shoes, plaintiff thereby built up good will for said employer's name and products, increased his list of customers and accounts from approximately 18 to more than 100 in number, and increased the amount of said employer's sales in said territory; that at all times during the period of said employment plaintiff conducted himself in said employment with efficiency, honesty and punctuality, was and continued to be in excellent health, and was able to and did perform his agreements and duties according to the terms of said employment contract, and performed all conditions precedent thereto, and was ready and willing to perform such agreement, but for the wrongful breach thereof by defendant, Mid-States Shoe Company, as hereinafter set forth.

He then alleges on or about September 30, 1957, defendant, Mid-States Shoe Company, wrongfully discharged plaintiff from his said employment contract without any reasonable or probable cause, and has refused to employ plaintiff for the remainder of the period thereunder, and has thereby wrongfully prevented plaintiff from completing said contract.

918

Judgment is demanded for the sum of $150,000.

The second Count of the Complaint, in addition to the allegations above made, charges: that at all times during the period of said employment plaintiff conducted himself in said employment with efficiency, honesty and punctuality, was in excellent health, and was able to and did devote all his energy, knowledge, talent and skill to such employment, and was held in high esteem by all those with whom he dealt as such salesman, and as a result of his endeavors plaintiff secured and maintained many prosperous and profitable accounts and earned large sums of money for himself and his family; that for several months prior to the termination of plaintiff's employment said Mid-States Shoe Company, through its agents and employees, attempted to persuade plaintiff to voluntarily resign from said employment, and plaintiff refused to do so and informed said Mid-States Shoe Company that he did not then, or in the future, intend or plan to resign, but intended and planned to continue his employment, that he was financially unable to retire, and that he must continue working in order to support his family and himself; that well knowing that plaintiff had devoted approximately thirty years to the shoe business as a salesman, and if discharged by it would reasonably seek employment with another Shoe Company, or other shoe companies, in direct competition with defendant, Mid-States Shoe Company, said defendant maliciously and wickedly contrived and intended to injure and destroy plaintiff's good name, credit and reputation in his occupation as a shoe salesman, and to bring him into disgrace among his customers and accounts, and to cause him to be regarded as a person unfit, unworthy, and unable to perform his duties in said occupation, and to prejudice and injure him in his business, occupation and means of earning a livelihood, and defendant, Mid-States Shoe Company, by and through its duly authorized employee and agent, E. C. Wegner, acting within the scope of his employment and agency, falsely, maliciously and wrongfully wrote, published and mailed certain false, malicious and scandalous statements of and concerning plaintiff in the form of letters, which is in the words and figures as follows, to-wit:

"It happens that our Mr. Dow, who has rendered 22 years of loyal service, and who has reached retirement age, plans to take it a little easier. We naturally regret to make this announcement to our dealers, but we join all of his customers and friends in wishing him the best of health and happiness.

"This letter affords the opportunity of introducing a young man by the name of Mel Newman as Mr. Dow's successor * * * *"

Said letters were mailed, or caused to be mailed on or about September 25, 1957, by Mid-States Shoe Company by U. S. mails to approximately 100 customers and accounts of plaintiff including, but not limited to the following names at their respective addresses as follows: He then names ten customers with their respective addresses.

The complaint further alleges that following his discharge by Mid-States Shoe Company, plaintiff was employed by Plymouth Shoe Company as a salesman, and that he solicited business from some of his former customers and accounts as well as others on behalf of said Plymouth Shoe Company; that as a result of said wrongful discharge from his employment by Mid-States Shoe Company, and as a result of said false, malicious and scandalous statements in the form of letters as set forth above, defendant, Mid-States Shoe Company, has maliciously, wrongfully and unjustly interfered with plaintiff's right to engage in his calling and occupation as a shoe salesman, and his right to enter into contracts and make sales to his former customers and accounts as well as others, and plaintiff has thereby been deprived of great sums of money he would have otherwise earned and have been paid; and that as a result of said wrongful discharge and of said malicious, wrongful and unjust interfer-

ence with said rights of plaintiff, plaintiff is entitled to recover from and against defendant, Mid-States Shoe Company, exemplary or punitive damages in addition to the actual damages sustained by plaintiff, and prays judgment in the amount of $150,000.

To this amended complaint defendant, Mid-States Shoe Company, makes its Motion to Dismiss Counts III and IV.

As to Count III defendant says: (1) the amended complaint fails to state a cause of action against this defendant upon which relief can be granted, (2) that it is alleged in plaintiff's amended complaint that a relationship existed between the Walter Booth Shoe Company and the plaintiff, that the Walter Booth Shoe Company is not a defendant herein, and such allegation cannot be a basis for recovery against this defendant; that all of said allegations with reference to Walter Booth Shoe Company should be stricken, (3) said amended complaint contains no allegation of sufficient authority for this defendant to have entered into a contract of the extent and nature of that alleged by the plaintiff since there is no allegation of any resolution of the Board of Directors of this defendant authorizing such a contract; that a contract of the nature complained of by the plaintiff would be void as contrary to public policy in the absence of a resolution of the Board of Directors authorizing the same, and that the same would be voidable under the law of the State of Illinois, and void under the law of the State of Wisconsin, (4) that said amended complaint is insufficient because it alleges the contract was one which neither the plaintiff nor the defendant, had they entered into the same, would have expected to be performed within one year, and said contract is therefore void or voidable because it violates the Statute of Frauds, (5) that subdivisions a, b, c and d of Paragraph 5 of Count III of the amended complaint are insufficient for the reason that they contain the conclusions of the pleader only rather than the allegations of fact upon which the plaintiff relies, and that by reason thereof the said Paragraph 5 should be stricken, that Paragraph 5–d of Count III of the amended complaint is insufficient because said allegations are by conclusion rather than by statement of facts upon which plaintiff relies; (6) the plaintiff alleges that the Walter Booth Shoe Company agreed orally to employ the plaintiff but said contract if consumated by the Walter Booth Shoe Company, was not binding upon this defendant and is void or voidable because it violates the Statute of Frauds; (7) that the alleged agreement that plaintiff was orally employed by Walter Booth Shoe Company and that this defendant ratified said oral agreement, is void or voidable and not binding on this defendant because it violates the Statute of Frauds.

The defendant moves also to strike Count IV of the amended complaint for the reason that the letter as above quoted does not contain a false, malicious or wrongful statement, does not contain a malicious, wrongful or unjust inference, and does not constitute an action for the interference with the rights of plaintiff in his employment; that there are no allegations that the defendant, Mid-States Shoe Company willfully and intentionally interfered with the plaintiff's business rights by writing said letter; that all allegations of said amended complaint wherein the plaintiff charges that said letter, Exhibit A, contains scandalous statements are conclusions and should be stricken by the amended complaint as there is nothing in the language of Exhibit A which can be construed as scandalous or malicious; that Count IV asking for exemplary or punitive damages should be stricken as there is no right under the law for the plaintiff's recovery for exemplary or punitive damages; that plaintiff's amended complaint alleges that the letter, Exhibit A, was written on or about September 27, 1957, at which time the plaintiff was in the employ of the defendant and did not have employment with any other concern, and that by reason thereof the letter, Exhibit A, did not prevent the plaintiff from obtaining other employment and did not interfere with

any business relationship which said plaintiff had at the time said letter was written, and finally that Count IV does not state a cause of action upon which relief may be granted.

 As to Count III of the amended complaint, it is readily apparent that the contract alleged was an oral employment contract for life. The defendant, by its motion, questions the validity of this type of contract for two reasons, (1) the contract is unenforceable because it violates the Statute of Frauds, and (2) the contract was not authorized by a resolution of the Board of Directors of the Walter Booth Shoe Company, the predecessor of the defendant.

This contract was allegedly executed in Wisconsin and both parties agree that Wisconsin law governs its validity.

The plaintiff relies on the case of Nelsen v. Farmers Mutual Auto Insurance Company, 4 Wis.2d 36, 90 N.W.2d 123 in support of his contention that the contract is not within the Statute of Frauds.

The Wisconsin Statute of Frauds provides as follows:

"241.02 In the following case every agreement shall be void unless such agreement or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party charged therewith:

"(1) Every agreement that by its terms is not to be performed within one year from the making thereof."

This statute was affirmatively set up as a defense in the Nelsen case. The court held that it did not apply in that case. However the Court points out that Nelsen was not an employee, but an independent contractor in the following language:

"As to the contention that the contract was for an indefinite term and therefore terminable at will, we may say that practically all the cases cited by appellant are cases of 'employment' which are not applicable since appellant has always maintained that Nelsen was not an employee

but an independent contractor." 90 N.W.2d 123, 131, 132 and 133.

In discussing the line of cases cited by the appellant, the court further said:

"Lewis v. Minnesota Mutual Life Insurance Co., 1949, 240 Iowa 1249, 37 N.W.2d 316, is also distinguishable. The parties entered into a written contract of agency providing for termination by either at any time upon written notice. The evidence was in dispute as to whether or not the written contract was subsequently modified orally to retain plaintiff as agent for his lifetime. The court found that the evidence was insufficient to establish such modification and failed to show any additional consideration for the claimed lifetime agreement. On this state of the evidence the court held that in the absence of consideration in addition to the services to be rendered, such contracts are indefinite hirings, terminable at the will of either party." At page 132.

The court in reaching its decision says:

"The crux of the question, however, lies in the fact, as stated above, Nelsen's performance under the contract, from the moment he started spending his time and money in building up the district agency, constituted a valuable executed consideration for the promise of Services to continue the contract so long as the Insurance Company wrote insurance in Nelsen's district. Such promise, even though by its terms it was not to be performed within a year, is not within the statute of frauds,"

and cites in support thereof McClellan v. Sanford, 26 Wis. 595, an executed consideration case. Thus the expressions of the Wisconsin Court in this case have prompted this Court to further examine the history of the thinking of the Wisconsin Court in other cases to be able to understand and determine the law of Wisconsin on this question. It is here pointed out that in the present case the sole consideration paid to plaintiff was

a salary equal to 6% of his sales. This is alleged by plaintiff in various ways but the only salary from the very first was 6% of his sales for the services to be rendered by him. The more shoes sold, the larger the salary, whether by selling or by increasing the selling by the use of his own ideas, the development of new territory, or by confining himself as exclusively limited to selling for Walter Booth Shoe Company for which exclusiveness the employer and the employee had a legal right to contract, or whether the employee was to pay his own expenses in this employment of selling, the salary for the employment always remained 6% of gross sales. Thus this case alleges a relationship of employer and employee. The plaintiff so describes himself as an employee and the defendant and its predecessor as the employer. The defendant admits the relationship by its motion to dismiss.

This Court believes from an examination of all the Wisconsin authorities that the law of Wisconsin is adverse to the position of the plaintiff. In the case of Chase v. Hinkley, 126 Wis. 75, 105 N.W. 230, 2 L.R.A.,N.S., 738, the Wisconsin Court had occasion to go into the very question here presented, viz.: The Wisconsin Statute of Frauds prevents an action under an oral lifetime employment contract. In this case, the Court said, 126 Wis. at pages 78, 79, 105 N.W. at page 233,

"The excess of two days was just as efficient as a longer period to render the agreement void under subdivision 1, § 2307, Rev.St.1898 (which is the same statute as hereinabove quoted) which provides that 'every agreement' shall be void 'that by its terms is not to be performed within one year from the making thereof.' Any excess of the year period, however short, is sufficient to satisfy the statute. That was stated very forcibly by Lord Ellenborough in Bracegirdle v. Heald, 1 B & Ald. 722, the reason therefor being expressed in these words:

" 'If we were to hold that a case which extended one minute beyond the time pointed out by the statute did not fall within its prohibition, I do not see where we could stop; for in point of reason, an excess of 20 years will equally not be within the act. Such difficulties rather turn upon the policy, than upon the construction of the Statute.'

"The fact that the period of service agreed upon was to extend for one year from the time performance commenced does not take the case out of the statute, for where performance is to commence in the future, for the purposes of the statute, the period to be considered is that beginning with the date of the agreement. Sharp v. Rhiel, 55 Mo. 97; Cohen v. Stein, 61 Wis. 508, 21 N.W. 514; Draheim v. Evison, 112 Wis. 27, 87 N.W. 795; Sutcliffe v. Atlantic Mills, 13 R.I. 480; Kleeman v. Collins, 9 Bush 460, 72 Ky. 460; Little v. Wilson, 4 Ed.Smith (N.Y.) 422; Banks v. Crossland, L. R. 10 Q.B. 97; Scoggin v. Blackwell, 36 Ala. 351; Kelly v. Terrell, 26 Ga. 551; Wilson v. Martin, 1 Denio [N. Y.] 602; Snelling v. Huntingfield, 1 C.M. & R. 20; Cawthorne v. Cordrey, 13 C.B.N.S. 406; Billington v. Cahill, 51 Hun 132, 4 N.Y.S. 660.

"The cases cited, in the main, involved facts substantially identical with those before us. In Scoggin v. Blackwell, supra, it was held that a contract made on one day to work for a year from the following day was within the statute. In Kelly v. Terrell, supra, a contract made before Christmas to serve for the next year was condemned. In Wilson v. Martin, supra, an agreement made in April for hire for one year from May 1st thereafter met a like fate. In Banks v. Crossland an agreement entered into on the 11th of November, the execution of which was to commence the following day and performance continue for a year there-

after, was likewise condemned. In Snelling v. Huntingfield, supra, a proposal made July 20, by one person to another for the latter to enter the former's service for the period of one year, accepted by such after July 24 solely by his act of then commencing to serve, was held to date from the 20th and to be void under the statute. In Cawthorne v. Cordrey, supra, an agreement made on March 24th, for a year's service to commence March 25th was saved, but there was evidence warranting the jury in finding that there was a second contract made for a year's service on the 25th."

"There are authorities holding that contracts for personal services are not within the Statute, since only those are which cannot be performed within a year, not those which may be contingently terminated. It is reasoned that since the death of a servant ends his term of service without breaking his contract, though in form not to be performed within a year it may be so performed. Hill v. Jamieson, 16 Ind. 125. Though the death of the servant has the effect stated, leaving the employer liable upon the contract for the time service was actually rendered, it is held generally that contracting parties are not presumed to have in mind the termination of the agreement in that way, and that the mere legal effect, as to excusing full performance, will no more take the case out of the statute than would any other act having like effect. Such a case differs from that where one contracts to render continuous service terminable upon a stipulated contingency, as to support another for the remainder of his natural life. Such a contract is not within the statute because by its terms it ceases with the death contemplated. Heath v. Heath, 31 Wis. 223. Ordinary contracts for personal services are not affected by that rule according to the great weight of authority Browne, Statute of Frauds (5th Ed.) §§ 282a, 282b. So it will be found that in cases involving such services the statute is applied regardless of the fact that the legal effect of the servant's death is to terminate the agreement. Cohen v. Stein, supra, Draheim v. Evison, supra, 20 Am. & Eng. Ency. of Law, 47, 48 and notes 29 id 943 and notes.

"Partial performance of a contract void under the statute of frauds does not save it. Either party can terminate the services at any time and the employé recover, as he did in this case, the reasonable value of the work done. Cohen v. Stein, supra, Salb v. Campbell, 65 Wis. 405, 27 N.W. 45; Koch v. Williams, 82 Wis. 186, 52 N.W. 257; Martin v. Martin's Estate, 108 Wis. 284, 289, 84 N.W. 439; Draheim v. Evison, supra." See also Brown v. Oneida Knitting Mills, 226 Wis. 662, 277 N. W. 653; In re Hippe's Estate, 200 Wis. 373, 228 N.W. 522 and Draheim v. Evison, 112 Wis. 27, 87 N.W. 795.

There is an extensive annotation on this question in 28 A.L.R.2d 870 following the reported case of Dicks v. Clarence L. Boyd Company, Inc., 205 Okl. 383, 238 P.2d 315, 317, 28 A.L.R.2d 870. The oral contract involved provided as "long as plaintiff was able to continue actively in said work." The court in holding this contract void under the Oklahoma Statute of Frauds, said:

" ' "Permanent employment" ordinarily means employment for an indefinite period, which, in the absence of some special consideration, may be arbitrarily severed at any time by either party'. In this case the court further held: ' "Permanent employment" means employment for an indefinite period which may be severed by either party. Bouv.Law Dict. As a general rule the word "permanent," as applied to employment, is construed to mean that the employe shall retain the position only until one of the contracting parties shall elect to terminate it, and this elec-

tion may be an arbitrary one without assigning any cause therefor. This construction is uniformly placed thereon, unless it appears that the contract was entered into with some valuable consideration as its basis, as where one agrees to give another permanent employment in settlement of a claim for personal injuries and like instances.' * * * Plaintiff does not allege that the oral contracts of 1930 and 1936 for 'permanent employment as long as he was able to continue actively at work' was based on any consideration other than his promise to perform the services of a sales agent on a commission basis. We have examined the authorities relied on by plaintiff and find they generally hold that the pleader relied on some specific consideration for the agreement, such as a release from injury or some valuable consideration passed to the employer at the time the contract * * * contained a contingency which could render the contract completely performed within a year."

As above pointed out under either of the above alternative allegations the contract of oral employment was on a commission basis of 6%. There had been no previous relation of employer and employee between the parties hereto. Personal injury is not involved. The plaintiff did not pay defendant any money to get the employment. The plaintiff points out no other consideration passing to the employer other than the services to be rendered. The cases cited on lifetime oral employment contracts under the above annotation holding that the employment contract was not within the Statute of Frauds, are Central National Bank of San Angelo v. Cox, Tex.Civ.App., 1936, 96 S.W.2d 746, in which the court found a good independent or executed consideration, Sax v. Detro Detroit, G. H. & M. R. Co., 1900, 125 Mich. 252, 84 N.W. 314, which involved the execution of a release for personal injury received in the employment, and McGehee v. South

Carolina Power Co., 1938, 187 S.C. 79, 196 S.E. 538, which also involved the execution of a release from personal injury.

It is well to point out that if this court were to hold that this case was not within the Statute of Frauds, the plaintiff would necessarily have to proceed on the theory that he could recover on the contract for services actually performed for this is the theory of all the cases holding such a contract not within the terms of the Statute. It has been pointed out above under the citation of Wisconsin cases and especially those allowing a recovery that compensation will only be allowed for services actually performed. The general rule is also pointed out in 49 Am.Jur. p. 414, Sec. 57, as follows:

"Any contract of employment indefinite in its duration which is possible of performance within a year, is not within the provisions of the statute, and it is the general rule that an oral contract of employment terminable at the will of either party in which no definite term longer than a year is agreed upon is not within the provisions of the Statute of Frauds relating to contracts which are not to be performed within a year. Under such contracts of hire the employer may remain as long as he suits the employer or until he himself becomes dissatisfied with the position, and it is possible for full performance to be had within a year."

Now to quote from the Wisconsin case of Chase v. Hinkley, 126 Wis. 75, 79, 105 N.W. 230, 232, 2 L.R.A.,N.S., 738,

"Partial performance of a contract void under the statute of frauds does not save it. Either party can terminate the services at any time and the employé recover, as he did in this case the reasonable value of the work done."

The plaintiff in this case does not claim that defendant failed to pay him for commissions actually earned up to the termination time, but seeks to claim dam-

ages for the future. The rule is further stated in 49 Am.Jur., p. 409, Sec. 51, as follows:

"Contracts of employment beginning in praesenti, and of indefinite duration, invariably are held not to be within the meaning of the provision of the Statute of Frauds requiring contracts not to be performed within a year to be in writing, since such contracts are terminable at any time by the parties, and are susceptible of performance within a year from the time of their inception. Clearly, a contract of employment terminable at the will of either party in which no definite term for a longer period than a year is agreed upon is not within the scope of the provision of the Statute of Frauds relating to contracts not to be performed within a year. Similarly, where the contract of employment is based upon a contingency that may happen within a year, as where the duration is for life of one of the parties, the contract is not within the statute."

Applying the rules announced, the plaintiff under amended Count III has no cause of action because he has been paid to termination date in one event, and the Statute bars him for any period longer than a year as he alleges.

■ There is also another ground set out in the motion to strike, viz.: The plaintiff makes no allegation that the Board of Directors of The Walter Booth Shoe Company authorized the lifetime employment contract. The plaintiff argues that The Walter Booth Shoe Company was a closely held corporation, and that the officers and directors knew about the employment contract. As the matter stands today, a new corporation is now the owner of all the assets of The Walter Booth Shoe Company, namely, Mid-States Shoe Company, doing business as the House of Crosby Square. If this Corporation is to be bound by any oral argeement made by The Walter Booth Shoe Company, the only way it could possibly have knowledge of the alleged lifetime contract would be from the records made by the Board of Directors of The Walter Booth Shoe Company, which could only be the records of the Board of Directors. Thus it plainly appears that without such corporate record, the new Corporation, as successor to The Walter Booth Shoe Company, was without means of obtaining such knowledge and it is readily discernible from reading the allegations of the amended Count III of the Complaint that the allegation is that The Walter Booth Shoe Company, entered into the alleged oral contract, which could only be done through some person as agent, such as president, vice-president, treasurer or secretary.

This exact question has never been before the courts of Wisconsin so far as I am able to find. However the question has been before the courts of other states. There is a substantial annotation on this question in 28 A.L.R.2d 909. The courts hold that such an oral contract for life employment is not within the authority of a president, vice-president, treasurer, secretary or general manager of a corporation and such authority cannot be implied, except only in cases where the life employment is in settlement for a personal injury claim of an employee, unless by resolution of the Board of Directors.

Amended Count III of the Complaint, lacking the allegation that the plaintiff was engaged pursuant to a resolution of the Board of Directors, in my opinion, fails to state a cause of action. The following cases, Lewis v. Minn. Mut. Life Ins. Co., 240 Iowa 1249, 37 N.W.2d 316; Chesapeake & Potomac Tel. Co. of Baltimore City v. Murray, 198 Md. 526, 84 A.2d 870, 28 A.L.R.2d 920; Heaman v. E. N. Rowell Co., 261 N.Y. 229, 185 N.E. 83; Carney v. New York Life Ins., 162 N.Y. 453, 57 N.E. 78, 49 L.R.A. 471; Seiss v. McClintic-Marshall Corp., 324 Pa. 201, 188 A. 109; Horvath v. Sheridan Wyo. Coal Co., 58 Wyo. 211, 131 P.2d 315; Starr v. Superheater Co., 7 Cir., 102 F.2d 170, so hold.

The fourth amended count charges that defendant, Mid-States, maliciously and wickedly contrived and intended to injure and destroy plaintiff's good name, credit and reputation as a shoe salesman and to bring him into disgrace among his customer's and accounts, and to cause him to be regarded as a person wholly unfit, unworthy, and unable to perform his duties in said occupation, and to prejudice and injure him in his business, occupation and means of earning a livelihood in that the defendant falsely, maliciously and wrongfully wrote, published and made certain, false, malicious and scandalous statements, concerning plaintiff in the form of a letter.

The letter is as follows:

"The House of Crosby Square,
"A Division of Mid-States Shoe Company,
"Milwaukee 12, Wisconsin.
"September 27, 1957

"Dear Customer:

"It happens that our Mr. Dow, who has rendered 22 years of loyal service, and who has reached retirement age, plans to take it a little easier. We naturally regret to make this announcement to our dealers but we join all of his customers and friends in wishing him the best of health and happiness.

"This letter affords the opportunity of introducing a young man by the name of Mel Newman as Mr. Dow's successor. While Mr. Newman is a comparatively young man, he has had a number of years of experience in selling another line of men's shoes. He is well versed in the shoe business. He understands dealers' problems thoroughly and, above all, he possesses a keen desire to serve his accounts with a maximum amount of efficiency. While our spring line will not be ready until the last week in October, Mr. Newman is anxious to contact his dealers beginning October 1st in order to give them the opportunity of covering their needs at current prices.

"He will be calling on as many dealers as he possibly can. If you are desirous of having him call on you, we suggest that you drop us a note to that effect here at our Milwaukee Office. We, in turn, will of course appreciate any courtesy that you may see fit to show him.

"Yours very truly,
"The House of Crosby Square.
"ECW/d"

It is then alleged that this letter was mailed on September 27, 1957, by defendant to approximately 100 customers and accounts naming 10 of the shoe dealers with their respective addresses in Illinois and Missouri and that on September 30, 1957, defendant wrongfully discharged plaintiff; that thereafter plaintiff secured employment with Plymouth Shoe Company as a salesman and solicited business from some of his former customers and accounts; that as a result of said wrongful discharge by Mid-States and as a result of said false, malicious and scandalous statements in the above quoted letter, the defendant has wrongfully and unjustly interfered with plaintiff's right to engage in his calling and occupation as a shoe salesman and his right to enter into contracts and make sales to his former customers and accounts.

The last allegation of the complaint charges that as a result of the alleged wrongful discharge from employment and of said malicious, wrongful and unjust interference with said rights of plaintiff, he is entitled to recover damages exemplary and punitive as well as actual damages and demands judgment for $150,000.

It is above pointed out that the alleged contract was terminable at will; that defendant exercised this right and terminated the employment. Thus there is no basis alleged in the complaint for wrongful discharge.

■ It is clear that plaintiff alleges a cause of action, and seeks to base it on the letter above quoted. It is pointed out here that this letter did not prevent plaintiff from securing a new employment with Plymouth Shoe Company in his alleged business as a shoe salesman. It is further pointed out that his alleged customers and accounts were not his but those of defendant, for whom plaintiff was merely an agent in selling shoes. It follows that the allegations of plaintiff are mere conclusions unjustified by the facts in relation to the so alleged wrongful discharge. The rights of plaintiff in his calling were those common to any shoe salesman, the business of selling shoes for any one who would employ him, the right to call upon any dealer in shoes and sell him shoes on a commission basis, the right to take orders for any shoes so sold, the right to travel from place to place over territory wherein were located shoe dealers who would give him orders for shoes, the right to collect his commissions on any shoes sold, the right to use his skill in selling shoes, the right to enter the shoe stores of any person he knew including the customers of defendant, in his varied experience as a shoe salesman, the right to use his personality to sell shoes, the right to tell these customers of the quality of the shoes of his new employer, the right to make comparisons between the shoes of the defendant with the shoes of his new employer, the right to advertise his new line of shoes and the right to use his selling ability. It cannot be said that the letter interfered with these rights.

■ Now the gravamen of the charge thus gets down to this: Did this letter contain any libelous statement about the plaintiff? The matter of the reason for termination of employment were matters exclusively between plaintiff and defendant. These matters were not disclosed by this letter. None of the persons to whom the letter was addressed were told of what happened between these litigants. The letter did not say anything wrong about the plaintiff. It merely told the customers of defendant that plaintiff was no longer in the employ of defendant and introduced the name of his successor. There is no word of defamation written about plaintiff. In fact the converse is true for its says that plaintiff "has rendered 22 years of loyal service." For all that any dealer knew the letter said " * * * Mr. Dow has reached retirement age, plans to take it a little easier." Nothing wrong can be impugned against plaintiff from this letter. The plaintiff by the words of his complaint seeks to imply that these words are false, malicious and scandalous. It may be that differences arose between these parties, but the letter makes no such disclosure. Plaintiff seeks to construe into these words by innuendo his alleged attending circumstances arising at the termination of the employment. This could only be made known to any dealer by plaintiff, himself. Thus circumstances, unknown to any one who received the letter, cannot be read into the statements in the letter and the law so is.

This rule is set out in 33 Am.Jur. Paragraph 86, p. 100, as follows:

"As a qualification of the rule that surrounding circumstances are to be considered in determining the meaning of the alleged defamatory language, it has been declared that attending circumstances which were unknown to the bearers cannot be considered."

Thus any innuendo unknown to the customer to whom any letter was sent cannot be considered.

The true rule concerning libelous written words is set out in 33 Am.Jur. Sec. 87, p. 100, as follows:

"The intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous, but from the context; all the parts of the publication must be considered in order to ascertain the true meaning, and words are not to be given a meaning other than that which the context would show them to have."

Applying this rule of law to the factual situation alleged, all that can be said of the words of the letter is that plaintiff was no longer the salesman for defendant, having been replaced by Mel Newman. There is nothing malicious, scandalous or false about this.

In discussing the discharge of an employee the same author, at 33 Am.Jur., Paragraph 72, p. 86:

"Where not privileged, written words concerning the discharge of an employee from employment may be actionable if they impute unfitness to perform the duties of the employment, or if they prejudice him in his profession or trade * * * However, mere silence cannot amount to slander * * *"

In an examination of cases, which approach a set of facts equivalent to those in this case, there are two New York cases, namely, Ratzel v. New York News Pub. Co., 67 App.Div. 598, 73 N.Y.S. 849, and Browne v. Prudden-Winslow Co., 195 App.Div. 419, 186 N.Y.S. 350, 352, which hold that a letter such as written in this case is not libelous. In the former, where the defendant company published a notice that the plaintiff had been discharged and gave the reason for discharging him, it was held that an employer has the right to notify his patrons that he has dispensed with the services of an employee, and state the reason therefor, and he will be protected in so doing if the notice is founded in fact; and in the latter the court said, "It is well settled that, where an employee has been discharged or severed his connection with the employer, the employer has the right to notify his customers of the cessation of employment and to state his reason therefor. In such a case the communication is qualifiedly privileged; that is, so long as the employer has reason to believe that the statements contained in his communication are true and the language used is not so intemperate and malevolent as to show a malicious intent to injure the employee, the employer cannot be held liable in damages, even though as a matter of fact, the state-ments in the communication were false, unless the plaintiff by extrinsic evidence proves actual malice." An examination of the letter in the light of these cases will only show at the most that because of the age of plaintiff, he was no longer in the employ of defendant, and that his successor would thereafter represent the defendant as a salesman. Hence this letter cannot be said to be libelous, nor can it be said from any innuendo actually and fairly implied therefrom, the letter had any malice or wickedness about it.

Accordingly the amended complaint is dismissed for failure to state a cause of action, and judgment is rendered against plaintiff for costs of suit.