BUCHHOLTZ *v.* BERT GOODMAN SIGNS, INC.

[No. 270, September Term, 1963.]

*Decided April 29, 1964.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Hyman B. Rubenstein,* with whom was *Irvin L. Fishbein* on the brief, for appellant.

*Henry J. Frankel,* with whom were *Stuart R. Wilcox* and *Frankel & Siegel* on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

This appeal involves a controversy between a principal and an agent as to the time when their agency relationship terminated. The solution of that issue will determine whether or not the principal is liable to the agent for commissions during the period in dispute.

On January 1, 1961, the appellant, Herbert Buchholtz, was retained by the appellee, Bert Goodman Signs, Inc., of Baltimore, to act as its sales agent and representative in the New York City area. The appellee was in the business of manufacturing signs for food chain stores. At first there was an oral agreement that Buchholtz would be paid a retainer of $150.00 a month for the servicing of old accounts, and in addition a commission of 15% on all sales made to accounts obtained by him subsequent to January 1, 1961. After Buchholtz requested that the agreement be put in writing, the appellee wrote a letter to him on March 29, 1961, setting out the above terms and further stating that he would be furnished, on a weekly basis, with copies of all bills or statements of sales made to customers obtained by him. Thereafter the appellee did in fact furnish Buchholtz weekly with copies of invoices of all sales to his ac-

counts. In addition, at the beginning of each month the appellee sent him a recapitulation sheet setting forth all sales made to accounts obtained by him and the commissions due him, together with a check for the total amount of commissions and retainer for the preceding month.

This arrangement continued into the month of August, 1962. Previously, in June, 1962, Buchholtz had sent to the appellee an offer to enter into a new agency contract, which the appellee refused to accept. On August 11, 1962, Buchholtz went to the appellee's place of business to attempt again to obtain a new contract which would give him a commission on all sales in the New York area, whether the customers were obtained by him or by the appellee. Again, the appellee refused to accept the proposed contract.

Thereafter, some dissension developed between the parties, though the commissions for the month of August were paid by the appellee, at least in part, in September, 1962, as scheduled. On October 8, 1962, Bertram Goodman, the president of the appellee company, mailed to Buchholtz a check for $1,000.00, together with a letter, which read:

"October 8, 1962

"Dear Herb:

Enclosed check for $1,000.00 on account we haven't completed our figures for the month, however I did not want to keep you waiting. This should hold you until I complete the accounts this week-end. I am returning Harvest Lodge letter and request in all fairness don't you think that is in your department under the heading of pay-offs, good will and general sales expense.

Bert"

Goodman conceded in his testimony that "the month" mentioned in the letter referred to September, 1962. Buchholtz returned the check to the appellee with a notation that he was doing so in order that a check for the full amount of "back monies due from July, August and up-to-date as per your letter" could be forwarded to him by the appellee. On November 14, 1962, in the absence of any payment for the months of Sep-

tember and October, Buchholtz wrote the appellee a letter demanding payment of all monies due through September, copies of customer invoices through October 31, 1962, and copies of customer invoices from November 1, to date "and thence to be continued each week as in the past plus a monthly recap." Thereafter, Buchholtz received a registered letter from the appellee, dated November 26, 1962, which stated: "In furtherance of our discussion of July [Goodman testified this should have been August], 1962, I am hereby giving you formal written notice of the termination, rescission and cancellation of our contractual agreement of March 29, 1961." Buchholtz never received payment of commissions for the months of September, October and November, 1962, and the check tendered as partial payment for the month of September was not returned to him.

Thereafter, Buchholtz filed a bill in equity against the appellee for discovery, accounting, and a monetary decree, to recover commissions for the months of August (one account allegedly was not settled), September, October and November, 1962, and any other monies due under the contract. The Chancellor held that the agency relationship was severed in August, 1962, and therefore found that commissions were due the appellant only to and including August 31, 1962. A motion for a rehearing having been denied, the appellant entered this appeal.

Both parties agree that the appellant was employed under a contract at will, which could be terminated by either party at any time after proper notice. Cf. *C. & P. Telephone Co. v. Murray*, 198 Md. 526, 535-536, 84 A. 2d 870 (1951). It is the appellant's contention that the agency relationship between the parties terminated on November 26, 1962, when the appellee formally notified the appellant of the cancellation of their contract. On the other hand, the appellee contends, as the lower court found, that the relationship was severed in August, 1962, when the appellee refused to accept the new contract offered by the appellant. The only question before us for review is the correctness of the lower court's finding that the agency relationship ceased on August 31, 1962.

The generally accepted rule is stated in 3 Am. Jur. 2d, *Agency*, Sec. 34, as follows: "When once shown to have ex-

isted, an agency relation will be presumed to have continued, in the absence of anything to show its termination; and the burden of proving a revocation or other termination of an agency is on the party asserting it." Maryland has recognized and applied the rule stated. In *Woodcock v. Dennis,* 175 Md. 9, 15, 199 Atl. 845 (1938), this Court said:

"* * * it is well established as a rule of law that, where an agency has been shown to exist, the burden of proving termination of the agency is upon one relying on that fact * * *, so that in an action on a contract the defendant has the burden of proving that the plaintiff abandoned the contract or ended it, where he relies upon that as a defense. * * *"

And the notice of revocation should be unambiguous. As it is put in 1 *Mechem, Agency* (2nd ed.), Sec. 637, at p. 454:

"But whatever may be the form adopted, the notice should be unequivocal and not leave the parties in doubt as to the principal's intentions. Any ambiguity or uncertainty in such a case should be construed most strongly against the principal, in whose power it lay to prevent such a result."

Application of the principles stated to the present case makes it apparent that, since an agency relationship was conceded to exist, it was incumbent upon the appellee, as the party asserting termination of the relationship in August, 1962, to prove that the contract between the parties was in fact terminated at that time.

Our review of the evidence constrains us to conclude that the appellee failed to meet its burden of proving that the agency contract was ended prior to the receipt by the appellant of the appellee's letter of November 26, 1962. The appellee asserts that the refusal to enter a new agreement terminated the existing contract, citing *Williams v. Md. Glass Corp.,* 134 Md. 320, 106 Atl. 755 (1919), as authority for the proposition that an employer is relieved of any liability for commissions by showing a threatened resignation on the part of the employee unless an improper demand is granted. However, the *Williams*

case merely held that when an employee notified his employer that he would resign unless his salary were raised, and did in fact resign when his salary was not increased, he could not complain that he was unjustly discharged. In the case before us the only question involved is the time when the agency relationship terminated, not whether there was a wrongful discharge.

The lower court, in finding that the appellant's employment ceased after August 31, 1962, felt that, "the inference is that the old arrangements were out and at an end, and had been since August 11th", and all transactions thereafter amounted only to an attempt to make "new arrangements". However, while the termination or rescission of a contract of employment, as in the case of any contract, may be shown by inference or implication, this Court pointed out in *Vincent v. Palmer,* 179 Md. 365, 373, 19 A. 2d 183 (1941), that "To establish the rescission of a contract by implication, the acts relied upon must be unequivocal and inconsistent with the existence of the contract, and the evidence must be clear and convincing". See also *Burdette v. Burrows,* 228 Md. 568, 572, 180 A. 2d 833 (1962). In the instant case we do not find that the appellee produced sufficient evidence to establish a rescission by implication or inference. There was no showing of any acts which were clearly inconsistent with the continued existence of the contract. While the president of the appellee testified that he intended to rescind the agency contract at the meeting of August 11, 1962, and so informed the appellant at that time, his actions subsequent to the meeting were not consistent with such testimony.

Actually, the evidence shows that both parties treated the agreement of March 29, 1961, as continuing in existence after August, 1962. The unrebutted testimony of the appellant was that until November 26, 1962, he continued to service accounts for the appellee in New York. There was no testimony by the appellee as to the servicing of these customers by anyone other than the appellant. More important, however, is the fact that the appellee tendered partial payment of the September commissions on October 8, 1962, and thereby necessarily recognized the continuance of the agency contract. The president of the appellee attempted to suggest in his testimony that the

$1,000.00 tendered on October 8, 1962, was "termination pay". However, such a construction is negated by the letter accompanying the check which stated that only $1,000.00 was being forwarded "on account we haven't completed our figures for the month". Nowhere in the letter was it stated or intimated that the $1,000.00 was to be considered termination pay. In addition, the last sentence of the letter indicated a continuity of the existing relationship between the parties by referring a business matter back to the appellant as being in his "department". We feel that these actions clearly refute the appellee's claim that he "fired" the appellant and "cancelled the entire employment", on August 11, 1962.

Since the appellee, on whom the burden rested, failed to produce sufficient evidence to show that the agency relationship between the parties terminated prior to the formal notice of rescission on November 26, 1962, we are compelled to hold that the lower court was clearly in error in finding that the employment ceased after August, 1962. Maryland Rule 886. Therefore the judgment appealed from will be reversed, and the case remanded for further proceedings to determine the amount due from the appellee to the appellant.

*Judgment reversed; case remanded for further proceedings consistent with this opinion; costs to be paid by appellee.*