James Edmond PAGE, Jr., and Susan Nichols Page, Appellants,

v.

CAROLINA COACH COMPANY, Appellee.

No. 81–1041.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1981.

Decided Jan. 4, 1982.

Michael P. May, Baltimore, Md. (Patrick A. O'Doherty, Gordon C. Murray, Baltimore, Md., on brief), for appellants.

Warren M. Davison, Baltimore, Md. (Earle K. Shawe, Patrick M. Pilachowski, Shawe & Rosenthal, Baltimore, Md., on brief), for appellee.

Before HALL, PHILLIPS and CHAPMAN, Circuit Judges.

PER CURIAM:

James Page and his wife sued the Carolina Coach Company for breaching an alleged oral contract to employ Page for his lifetime. The district court directed a verdict in favor of the Company, and Page appeals. We affirm, although for reasons other than those relied upon by the district court.

Page started working for the Company in 1961 as a bus driver. In 1971, Page let it be known that he was interested in becoming a dispatcher. The dispatcher's position was

generally considered more desirable than that of driver because dispatchers worked regular hours, were not away from home overnight, and were entitled to better benefits. However, the drivers were represented by the Amalgamated Transit Union and were subject to a collective bargaining agreement which provided that a driver could be discharged only for just cause. Because dispatchers were part of management, they were not protected by a union contract. In Page's case this disadvantage was somewhat mitigated by a clause in the Transit Union contract which permitted drivers who became dispatchers to "bump back" to driver at any time without losing either seniority or benefits.

Page was asked by the chief dispatcher if he would like to work as a part-time dispatcher while retaining his full-time job as a driver. Page accepted, and started dispatching on weekends and his days off. In October, 1971, he relinquished his driver position to become a full-time dispatcher at the Company's State Road, Delaware, terminal. Shortly after this change, Ralph Heres, the Vice-President of Operations, told Page that he had made "a wise move."

The drivers' collective bargaining agreement was scheduled to expire in November, 1973. In early 1972, rumors began to circulate that the bump back clause would be eliminated when the current contract expired. To protect his seniority and job security, Page bumped back to driver in February, 1972. Nevertheless, in October, 1972, he again became a dispatcher. Although he was still fearful of losing his bump back rights, Page stated that he was induced to make the change by a Company supervisor. The "inducements" cited by Page were: (1) the regular work hours of the dispatcher position; (2) being home at night; and (3) the dispatcher's better benefits. As noted earlier, these inducements were simply characteristics of the dispatcher position.

In the spring of 1973, Page and his wife met with Heres. Page requested a transfer to Salisbury, Maryland, which Heres granted. Page's wife, however, was more concerned with her husband's job security and benefits. Heres told them that he considered Page to be a good employee with potential who would move up in the Company if he continued to do his job. Neither Page nor his wife could remember Heres stating a specific period of time during which Page could expect to be employed. Following the meeting, Page transferred to Salisbury and assumed his post as a dispatcher.

The drivers' collective bargaining agreement expired in November, 1973, and a new contract was negotiated and signed on April 1, 1973. As had been rumored, the bump back clause was deleted, but former drivers who had bump back rights under the old contract were given until May 16, 1974, to exercise those rights. After May 16, the rights would automatically terminate.

Page discussed this option with his wife, but not with any representative of the Company. Page decided to remain a dispatcher, and sent a letter informing Heres of his decision.

Page continued to work as a dispatcher at the Salisbury terminal until June 30, 1974, when he suffered a heart attack. For the next two months, he convalesced at home and received disability benefits. On the evening of August 30, 1974, Page drank an ounce of bourbon as directed by his doctor. At about 8:30 p. m., Page called the terminal to find out how the new dispatcher was handling the heavy Labor Day traffic. The dispatcher said that things were hectic, so Page went to the terminal to see if he could be of assistance. Page's condition apparently led other employees to believe that he was intoxicated, and as a result, he was subsequently discharged for having been on Company property while intoxicated.

Page sued the Company on a multi-count complaint alleging both tort and contractual theories of recovery. The district court entered summary judgment for the Company on all counts except an alleged breach of a lifetime employment contract. At trial, Page attempted to prove that Heres had promised him lifetime employment if he would become a dispatcher, and had induced him to leave his position as driver,

thereby forfeiting his union benefits and protection. The jury was unable to reach a verdict, so a mistrial was declared. The court then reconsidered the evidence and the lifetime contract theory and directed a verdict in favor of the Company. The court reasoned that the purported contract lacked mutuality of obligation because Page was not obligated to work for the Company. Further, the court concluded that the Company was not estopped from denying the contract's existence because Heres' statements could not reasonably be interpreted as a promise of lifetime employment. On appeal, Page challenges these conclusions.

The Company does not contend that Page's discharge was justified by his alleged intoxification, but rather that Page was an employee at will who could be terminated at any time without cause. Page argues that Heres' statements and his reliance on them created a contract of lifetime employment. Thus, the focal point of this appeal is the nature of Page's employment relationship with the Company.

■ Under Maryland law, an employment contract of indefinite duration is an employment at will which can be terminated without cause by either party. *Adler v. American Standard Corp.*, 290 Md. 615, 432 A.2d 464 (1981). A contract for lifetime employment can be created if the employee gives valuable consideration in addition to the services incident to the employment. *See C & P Telephone Co. v. Murray*, 198 Md. 526, 84 A.2d 870 (1951). For example, such a contract is created when an employee relinquishes a personal injury claim against his employer in exchange for the employer's promise of a lifetime job. *Pullman Co. v. Ray*, 201 Md. 268, 94 A.2d 266 (1952). However, the mere relinquishment of a "job, business or profession by one who decides to accept a contract for alleged life employment is but an incident necessary on his part to place himself in a position to accept and perform the contract, and is not consideration for a contract of life employment." *C & P Telephone Co.*, 198 Md. at 533, 84 A.2d at 873.

■ The foregoing authorities do not state whether the parties to a lifetime contract must mutually bind themselves to lifetime employment. In accordance with the majority of authorities, Page and the Company agree that the employee need not promise to work for the employer for a lifetime.[1] Therefore, the district court erred in ruling that the absence of mutually binding obligations precluded the existence of the contract.

■ Nevertheless, the evidence clearly shows that Page did nothing more than relinquish his job and benefits as a driver to assume the new position as dispatcher. This relinquishment is insufficient as a matter of law to provide consideration for a lifetime contract. Further, we agree with the district court that Heres' statements could not reasonably be interpreted as a promise of lifetime employment, but rather only as words of encouragement. Accordingly, Page has not established a factual basis for either a lifetime employment contract or contract by estoppel.

With the modifications noted herein, the district court judgment is affirmed.

AFFIRMED.

---

1. *See, e.g., F. S. Royster Guano Co. v. Hall*, 68 F.2d 533 (4th Cir. 1934). See generally, 3A A. Corbin, Contracts § 684 (1960), and cases collected at 58 A.L.R. 1312, 1315 (1929).