*Spacesaver Systems, Inc. v. Carla Adam*, No. 98, September Term, 2013, Opinion by Adkins, J.

**EMPLOYMENT LAW — INTERPRETATION OF EMPLOYMENT CONTRACT — EMPLOYMENT CONTRACT CONTAINING FOR-CAUSE PROVISION AND NO DEFINITE TERM OF EMPLOYMENT — FOR-CAUSE PROVISION NEGATES THE PRESUMPTION OF AT-WILL EMPLOYMENT:** A for-cause provision in a written employment contract negates the presumption of at-will employment.

**EMPLOYMENT LAW — INTERPRETATION OF EMPLOYMENT CONTRACT — EMPLOYMENT CONTRACT CONTAINING FOR-CAUSE PROVISION AND NO DEFINITE TERM OF EMPLOYMENT — "CONTINUOUS FOR-CAUSE," NOT LIFETIME CONTRACT:** "Continuous for-cause" better describes the nature of a written employment agreement that has a for-cause provision and no definite term of employment than "lifetime contract" does.

Circuit Court for Montgomery County
Case No. 330005-V
Argued: June 5, 2014

IN THE COURT OF APPEALS

OF MARYLAND

No. 98

September Term, 2013

SPACESAVER SYSTEMS, INC.

v.

CARLA ADAM

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Rodowsky, Lawrence F., Retired,
        Specially Assigned,

JJ.

Opinion by Adkins, J.

Filed:   August 27, 2014

Oil and water naturally resist each other. No matter how much one tries, the two cannot be mixed together successfully. As this case demonstrates, the same is often true of family and business. Following a dispute between sibling business partners, we are asked to re-examine the contours of the firmly established doctrine of at-will employment. We do so in order to determine if a written contract containing a for-cause provision, but no definite term of employment, exists as an at-will contract, a lifetime contract, or something else.

## FACTS AND LEGAL PROCEEDINGS

Petitioner, Spacesaver Systems, Inc. ("SSI"), was incorporated in the District of Columbia in 1973 by Jack and Alyce Schmidt. SSI sells and installs mobile storage equipment, including tracked shelving systems, to businesses and governmental organizations with large storage needs. In the 1990's, the Schmidts began transferring ownership of the business to their three children: Carla Adam ("Respondent"), Amy Hamilton ("Hamilton"), and David Craig ("Craig"). As the Schmidts eased out of the business and moved to Florida, the three siblings assumed greater responsibility in the company.

In 2006, Adam and Hamilton became concerned that Craig was stealing from SSI. Hamilton, Respondent, Albert Ellentuck (SSI's corporate attorney), and Erik Kloster (SSI's corporate accountant) met to discuss Craig's affiliation with SSI. As a result of this meeting, Ellentuck revised the siblings' employment agreements, which subsequently contained a provision for termination for cause. This provision appeared as follows:

4.2 Termination by the Company For Cause. The Company may, at any time and without notice, terminate the Employee for "cause". Termination by the Company of the Employee for "cause" shall include but not be limited to termination based on any of the following grounds: (a) insubordination or refusal to perform duties of employee's position as directed by the President of Company and affirmed by a majority vote of the Directors; (b) fraud, misappropriation, embezzlement or acts of similar dishonesty; (c) conviction of a felony involving moral turpitude; (d) illegal use of drugs or excessive use of alcohol in the workplace; (e) intentional and willful misconduct that may subject the Company to criminal or civil liability; (f) breach of the Employee's duty of loyalty, including the diversion or usurpation of corporate opportunities properly belonging to the Company; (g) willful disregard of Company policies and procedures; (h) material breach of any of the terms herein; and (i) material nonperformance or negligence in Employee's performance of her duties.

Adam's Executive Employment Agreement (the "Employment Agreement") references a "term of this Employment Agreement," but the parties failed to define this term.

Along with the revised employment agreements, Ellentuck drafted a Stock Purchase Agreement so that if an employee were terminated from SSI, she could be compelled to sell her stock to the other shareholders. Articles 3 and 5 of the Stock Purchase Agreement provide that SSI will redeem the stock in the event of disability or death of a shareholder. Article 4 provides that shareholders can be forced to sell their shares if they engage in "Prohibited Acts." These "Prohibited Acts" generally mirror the for-cause provisions listed in the Employment Agreement.[1]

---

[1] There are two differences between the "Prohibited Acts" and for-cause provisions. First, the for-cause provision in the Employment Agreement allows dismissal for "insubordination or refusal to perform duties of employee's position as directed by the President of Company and affirmed by a majority vote of the Directors." The Stock

2

On October 19, 2006, Adam, Craig, and Hamilton each signed the individual executive employment agreements and stock purchase agreements drafted by Ellentuck. Shortly after the employment agreements were executed, Craig resigned as President and Director of SSI. Pursuant to Adam's Stock Purchase Agreement, Craig's stock was sold equally to Adam and Hamilton, who consequently each held a 50% interest in SSI.

Despite Craig's departure, sibling harmony did not last long, as Hamilton and Adam began to have disputes about their respective job responsibilities and compensation. According to Hamilton, Adam's sales performance was "not very good." Consequently, Adam was removed from the sales force.

On May 28, 2009, Hamilton wrote Adam expressing her intent to acquire Adam's SSI stock, and concluding that Adam's employment was terminated. The conflict reached its apex when, on January 28, 2010, SSI sent Adam a letter terminating her employment. In response, Adam filed a Complaint on April 9, 2010 against SSI and Hamilton in the Circuit Court for Montgomery County. On July 30, 2010, Adam filed an Amended Complaint, which alleged that she was terminated without cause in violation of her Employment Agreement.

Adam filed a Motion for Partial Summary Judgment, contending that the Employment Agreement established that she could only be terminated for cause. SSI filed an Opposition to Motion for Partial Summary Judgment and Cross-Motion for Summary

Purchase Agreement contains no analogous provision. Second, the Stock Purchase Agreement includes as a Prohibited Act "termination for whatever reason of said Shareholder's employment with the Corporation." The Employment Agreement contains no analogous provision.

3

Judgment, denying that the Employment Agreement guaranteed Adam lifetime employment and asserting that even if the Employment Agreement were so construed, Adam had failed to give "additional consideration" for a lifetime contract.

Following a hearing, the motions court denied both motions for summary judgment on August 19, 2011. The hearing judge found the contract ambiguous, ruling that "extraneous evidence of what the parties intended may be admitted to assist the court in determining the agreement of the parties." After three days of testimony, the trial court ultimately concluded that the Employment Agreement transformed what had previously been an "at-will relationship" to a "lifetime contract," such that Adam could only be terminated for cause, death, or disability. Crucial to the trial court's analysis was that the for-cause provision would be rendered superfluous if the Employment Agreement were construed as at-will. The trial judge rhetorically asked, "why in the world would you have to worry about [cause] if you had an at-will contract?" The trial judge found a breach of the Employment Agreement, and awarded Adam $255,868.20, representing lost salary and commission.

SSI appealed to the Court of Special Appeals, asserting that the trial court erred in concluding that the Employment Agreement was not an at-will contract, but rather a for-cause lifetime contract. *Spacesaver Sys., Inc. v. Adam*, 212 Md. App. 422, 69 A.3d 494 (2013). On June 27, 2013, the Court of Special Appeals partially affirmed and partially reversed the trial court's interpretation of the contract, holding that the contract's plain language created a "continuous contract terminable for-cause," which obviated the need for special consideration. *Id*. at 447, 69 A.3d at 510.

4

SSI petitioned for writ of certiorari, which this Court granted on October 18, 2013 to answer the following questions:[2]

> 1. Is there any difference between lifetime and "continuous for-cause" contracts?
>
> 2. Did the Court of Special Appeals err in applying dicta from *Towson University v. Conte*, 384 Md. 68, 862 A.2d 941 (2004), which suggests that a "just cause" provision transforms at-will employment into lifetime employment terminable only for cause?
>
> 3. Does the presence of a for-cause provision, which does not state employment is terminable only for cause, transform at-will employment to lifetime employment terminable only for cause?

As to the second question, we affirm the judgment of the Court of Special Appeals. The first and third questions we shall answer in the course of explaining why this written employment contract is distinct from the alleged "lifetime employment contracts" that we have historically held to be unenforceable.

**STANDARD OF REVIEW**

"The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law, subject to *de novo* review." *Towson Univ. v. Conte*, 384 Md. 68, 78, 862 A.2d 941, 946 (2004) (quoting *Sy-Lene v. Starwood*, 376 Md. 157, 163, 829 A.2d 540, 544 (2003)). Maryland law dictates the objective interpretation of contracts, which provides for the following:

> [A court is to] determine from the language of the agreement itself what a reasonable person in the position of the parties

---

[2] For the sake of brevity, we shortened the questions from how they were presented in the briefs, retaining their essence.

5

would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean.

*Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985). In determining whether a contract is ambiguous, a court may consider "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution[.]" *Calomiris v. Woods*, 353 Md. 425, 436, 727 A.2d 358, 363 (1999) (quoting *Pac. Indem. v. Interstate Fire & Cas.,* 302 Md. 383, 388, 488 A.2d 486, 488 (1985)) (internal quotation marks omitted).[3]

### DISCUSSSION

Petitioner attacks the opinion of the Court of Special Appeals on several grounds. First, Petitioner maintains that when the Employment Agreement is read in conjunction with SSI's Employee Handbook,[4] it is clear that the contract could be terminated with or without cause. SSI highlights that the Employment Agreement's for-cause provision says

---

[3] "The circumstances for this purpose **include the entire situation**, as it appeared to the parties, and in appropriate cases may include facts known to one party of which the other had reason to know." Restatement (Second) of Contracts § 202 cmt. b (1981) (emphasis added).

[4] SSI's Employee Handbook "provides an overview of [SSI's] personnel policies and benefits." SSI further states that "[w]e expect each employee to read this Employee Handbook carefully; it is a valuable reference for understanding your rights and responsibilities."

that SSI "may" terminate for cause. The provision did not say that Adam can "only" be terminated for cause. Petitioner contends that if the for-cause provision were meant to carry so much weight, it would have authorized termination "only" for cause, which the Employment Agreement did not do.

Petitioner's most significant argument concerns the distinction that the intermediate appellate court drew between "continuous for-cause" and lifetime contracts. In Petitioner's view, there is no distinction between the two. SSI contends that both are terminable by the employer only for cause and terminable by the employee without cause. SSI alleges that the Court of Special Appeals described Adam's employment with the novel moniker of "continuous for-cause" to escape the requirements to establish a lifetime employment contract.

Expanding on this theme, Petitioner leans on the major presumption under Maryland law that an employment relationship is presumptively at-will unless the parties clearly and expressly set forth their agreement that the contract is to last for a specific period of time. In SSI's view, the lower court failed to apply the heightened standard applicable to lifetime contracts, making no finding that SSI's intent to provide lifetime employment was specific, definite, and unequivocal. Moreover, Petitioner argues that Adam failed to provide the "special consideration" required to support such a contract. In sum, Petitioner contends that, instead of addressing the various issues surrounding lifetime employment contracts, the Court of Specials Appeals simply created an "evil twin" and said "it is a for-cause contract that is of continuous duration, but it is not a lifetime contract." *Spacesaver*, 212 Md. App. at 448, 69 A.3d at 510.

7

Finally, and in a similar vein, Petitioner argues that the Court of Special Appeals ignored a strong precept of Maryland law that the at-will doctrine invariably applies when an employment contract is of an indefinite duration. Specifically, SSI posits that the intermediate appellate court has wrongly elevated dicta to law by holding that under *Conte*, the inclusion of a for-cause provision transforms an at-will contract to a for-cause contract. In SSI's view, this directly contravenes our previous holding in *Suburban Hospital, Inc. v. Dwiggins*, 324 Md. 294, 596 A.2d 1069 (1991) that an employment contract of indefinite duration is employment at-will, even if it states some bases giving the employer cause for termination. In this respect, SSI contends that this holding erodes the doctrine of lifetime employment.

In reply, Respondent urges us to affirm the Court of Special Appeals. Rather than responding directly to each of Petitioner's arguments, Respondent lays out a number of propositions that, in her view, compel the affirmance of the Court of Special Appeals.[5] First, Respondent alleges that the Employment Agreement is not an unambiguous at-will contract. She underscores that two lower courts have rejected the contract as unambiguously at-will based on the rationale that a for-cause provision is inconsistent with

---

[5] In particular, Respondent does not feel that this Court needs to address the distinction between "continuous for-cause" and lifetime contracts. She states, "[b]ecause, however, [she] is asking this Court to affirm that the Employment Agreement is not an at-will contract, this Court need not go farther and decide the proper label for the Employment Agreement."

8

an at-will contract.[6]  In her view, the very terms of the Employment Agreement establish that it is not an at-will agreement.  Similarly, Respondent rejects any applicability of the SSI Employee Handbook, observing that the Employment Agreement itself explicitly states that it will trump the provisions of the Handbook.

Respondent similarly rejects the relevance of "special consideration."  Respondent states that no Maryland authority supports the position that "special consideration" is necessary to establish a contract such as this one.  Adam avers that, although some jurisdictions require that lifetime contracts be supported by "special consideration," we are dealing with a "continuous for-cause" contract, not a lifetime contract.

Finally, moving to a policy perspective, Adam maintains that affirming the judgment below will not have adverse repercussions for employers generally.  She argues that any decision on this case will be limited to the facts of this case—one involving a closely held corporation and an employment agreement for high-level corporate officers.  Moreover, Respondent contends that employers can easily avoid the burdens of for-cause employment by drafting employment contracts explicitly to say "at-will" when they are meant to be at will.[7]

### *Presumption Of At-Will Employment*

---

[6] Among other evidence, Respondent points to testimony from the drafting attorney, Ellentuck, who testified that the contract was ambiguous on its face, particularly when the contract is read in conjunction with the Employee Handbook.

[7] Respondent also argues that "SSI is precluded from arguing that the employment agreement is void."  Despite Petitioner's statement that "[t]he contract utterly fails for lack of any clear and definite agreement as to Ms. Adam's compensation[,]" we are not convinced that Petitioner has argued that the contract is void in this appeal.

9

We begin by laying out the fundamentals of Maryland employment law. Our starting place is one of our most venerated common law precepts, the employment at-will doctrine. In *McCullough Iron Company v. Carpenter*, this Court announced that "[t]here can be no doubt that, in this country, the rule is, an indefinite hiring is *prima facie* a hiring at will." 67 Md. 554, 557, 11 A. 176, 178 (1887). This Court has confirmed this principle repeatedly and unequivocally. *See Porterfield v. Mascari II, Inc.*, 374 Md. 402, 421–22, 823 A.2d 590, 601 (2003) ("The employment at-will doctrine long has been part of the common law of Maryland."); *Adler v. Am. Standard Corp.*, 291 Md. 31, 35, 432 A.2d 464, 467 (1981) ("The common law rule, applicable in Maryland, is that an employment contract of indefinite duration, that is, at will, can be legally terminated at the pleasure of either party at any time."); *see also* Stanley Mazaroff & Todd Horn, *Maryland Employment Law* § 3.02[1] (2d ed. 2014) ("Recognizing the continued vitality of the employment at will doctrine, Maryland courts have held that an employment relationship presumptively is at will unless the parties clearly and expressly set forth their agreement that the contract is to last for a specific period of time.").

This common law doctrine reflects the courts' concern with promoting freedom of contract and fundamental fairness. *See Dwiggins*, 324 Md. at 303, 596 A.2d at 1073 ("The [employment at-will] doctrine was born during a laissez-faire period in our country's history, when personal freedom to contract or to engage in a business enterprise was considered to be of primary importance."). This rationale is clearly expounded in Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts*:

10

[T]he courts have shown a marked reluctance to enforce contracts for life employment. In large part, this stems from the realization that such contracts frequently are, in practical effect, unilateral undertakings by the employer to provide a job for so long as the employee wishes to continue in it but impose no corresponding obligation upon the employee. When this is the case, the burden of performance is unequal, as the employer appears to be bound to the terms of the contract, while the employee is free to terminate it at will. Accordingly, it has been said:

> An employee is never presumed to engage his services permanently, thereby cutting himself off from all chances of improving his condition; indeed, in this land of opportunity it would be against public policy and the spirit of our institutions that any man should thus handicap himself; and the law will presume . . . that he did not so intend. And if the contract of employment be not binding on the employee for the whole term of such employment, then it cannot be binding upon the employer; there would be lack of "mutuality."

§ 54:39 (4th ed. 2001) (quoting *Pitcher v. United Oil & Gas Syndicate*, 174 La. 66, 69, 139 So. 760, 761 (La. 1932)) (ellipsis in original) (footnotes omitted).

Yet we observe that presumptions can only act as an aid to interpreting a contract, not as a substantive limit on parties' ability to contract. *See id.* ("The employment-at-will doctrine is a rule of contract construction, not a rule imposing substantive limitations on the parties' freedom to contract . . . '[i]f the parties include a clear job security provision in an employment contract, the presumption that the employment is at-will may be negated.'" (quoting *Eck & Assocs., Inc. v. Alusuisse Flexible Packaging, Inc.*, 700 N.E.2d 1163, 1167 (Ind. Ct. App. 1998))) (footnotes omitted). Indeed, the employment at-will doctrine, even in the seminal case of *McCullough*, was not presented as absolute. 67 Md.

11

at 557, 11 A. at 178.  There, this Court observed that "an indefinite hiring is **prima facie** a hiring at will." *Id*. (emphasis added).  Nothing in this doctrine prohibits contracting parties from showing a mutual understanding that rebuts this prima facie presumption.

Indeed the presumption of at-will employment can be defeated through the inclusion of a just-cause requirement, or by specifying a duration of employment:

> While the language of the contract itself may express a just cause requirement, a contractual delineation of the length of the employment period will also create a just cause employment relationship because by specifying the length or term of employment, the employer usually is considered to have surrendered its ability to terminate the employee at its discretion.

*Conte*, 384 Md. at 80, 862 A.2d at 947–48; *see also* Mazaroff, discussed *supra*.

One type of for-cause employment is lifetime employment.  We discussed lifetime employment at length in *Chesapeake & Potomac Telephone Co. of Baltimore City v. Murray*, 198 Md. 526, 84 A.2d 870 (1951).  "[A] contract for permanent or life employment is valid and continues to operate as long as the employer remains in the business and has work for the employee and the employee is able and willing to do his work satisfactorily and does not give good cause for his discharge." *Id*. at 533, 84 A.2d at 873.  We declared, however, that those claiming a lifetime employment contract faced an uphill climb.

First, the law protects stockholders' ability to alter a corporation's management by electing boards of directors. *Id*. at 531, 84 A.2d at 872.  Recognizing that the directors' authority would be hollow if corporate officers were able to grant "persons of their selection employment for life," we stated that one hurdle to lifetime contacts is "proof that

12

there was definite authority, by by-law, action by the board of directors, or otherwise, to make such a contract." *Id.*

Second, a lifetime employment contract must be supported by consideration beyond that incident to accepting the position. *See id.* at 533, 84 A.2d at 873 (holding that "the mere giving up of a job, business or profession by one who decides to accept a contract for alleged life employment . . . to place himself in a position to accept and perform the contract" is not sufficient consideration for lifetime employment); *see also Page v. Carolina Coach Co.*, 667 F.2d 1156, 1158 (4th Cir. 1982) (holding that relinquishing a job and benefits to assume a new position was not sufficient consideration for lifetime employment).

Third, a lifetime employment contract must clearly stipulate the "terms as to work and salary" in order to be enforceable. *Murray*, 198 Md. at 534, 84 A.2d at 874; *see also Balt. & Ohio R. Co. v. King*, 168 Md. 142, 149, 176 A. 626, 628 (1935) (holding that lifetime contracts "at least should be specific and definite, with little or no room for misunderstanding, even if they are not required to be in writing" (quoting *Arentz v. Morse Dry Dock & Repair Co.*, 249 N.Y. 439, 443, 164 N.E. 342, 344 (N.Y. 1928))); *Yost v. Early*, 87 Md. App. 364, 383–85, 589 A.2d 1291, 1300–01 (1991) (reaffirming that an alleged oral lifetime employment contract was only employment at-will because there was no showing that it clearly expressed the specific terms of the agreement, including duties, wages, and performance guidelines).

Before evaluating the Employment Agreement, we observe that our primary inquiry concerns whether the contract created at-will or for-cause employment. For our purposes

13

here, employment contracts can be broken into three categories, those with: (i) specific temporal duration, terminable before the expiration only for cause; (ii) no specified temporal duration, but containing a clear for-cause termination provision; and (iii) no temporal duration, and no for-cause termination provision, which are terminable at will. Placing the Employment Agreement in one of these three categories will determine the resolution of this controversy, as Adam has no cause of action sounding in breach of her employment contract if she fits in the third category, at-will employment. *See* James J. O'Malley, "Cause of Action for Wrongful Discharge from Employment in Breach of Contract," 18 *Causes of Action* 229 (1989) ("To establish a prima facie case in an action for wrongful discharge from employment in breach of contract, the plaintiff must prove that: 1. The defendant promised . . . c. that the plaintiff would be discharged only for just cause[.]").

### *Nature Of The Employment Agreement*

"Our analysis begins, as it should, with the language of the employment contract at issue." *Conte*, 384 Md. at 78, 862 A.2d at 946. Under the objective interpretation of contracts, we focus upon whether a reasonable person, in the parties' position, would have thought that the contract provided any measure of job security. "Under the objective view, a written contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Calomiris*, 353 Md. at 436, 727 A.2d at 363 (citation omitted). Moreover, this Court has been clear in observing that:

> "[a] recognized rule of construction in ascertaining the true
> meaning of a contract is that the contract must be construed in
> its entirety and, if reasonably possible, effect must be given to

14

each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed."

*Cochran v. Norkunas*, 398 Md. 1, 17–18, 919 A.2d 700, 710 (2007) (quoting *Sagner v. Glenangus Farms*, 234 Md. 156, 167, 198 A.2d 277, 283 (1964)).

Although the Employment Agreement is silent as to its duration, which can signify at-will employment, it also contains a for-cause provision, which negates an at-will employment contract. *Conte* is instructive on this point. After evaluating Dr. Conte's employment contract, which had a for-cause provision similar to Adam's and a definite durational term, we held that the contract "makes clear that Dr. Conte was not an 'at-will' employee." *Conte*, 384 Md. at 79, 862 A.2d at 947. We also held that the university could not avail itself of the protections afforded employers who terminate at-will employees. *Id*.

Of special import here, the *Conte* Court also opined that either a for-cause provision or "a contractual delineation of the length of the employment period" will **independently** establish that an employee was not at-will. *Id.* at 80, 862 A.2d at 948. Petitioner characterizes this pronouncement as dicta that is at odds with *Dwiggins*. We agree that it was dicta, but feel secure in embracing it here. Indeed, *Conte* finds support from a number of other jurisdictions that have adopted a similar rule. *See Bell v. Ivory*, 966 F. Supp. 23, 29 (D.D.C. 1997) ("The presumption of 'at will' employment can be overcome by the creation of a contract of employment for a fixed term **or an indefinite contract that allows termination only for cause**.") (emphasis added); *Gladden v. Ark. Children's Hosp.*, 292 Ark. 130, 136, 728 S.W.2d 501, 505 (Ark. 1987) ("[W]e reject as outmoded and untenable

15

[the view] that the at will rule applies even where the employment agreement contains a provision that the employee will not be discharged except for cause, unless it is for a definite term."); *Dillman v. N.H. College*, 150 N.H. 431, 434, 838 A.2d 1274, 1276 (N.H. 2003) ("Where, however, an employment agreement specifies a definite term, it is generally implied that the employee can be discharged only for cause.").

We disagree with Petitioner's claim that the rule from *Conte* that we embrace here is in any way contradicted by *Dwiggins*. In *Dwiggins*, an employee was suspended for violating rules set by his employer. 324 Md. at 299, 596 A.2d at 1071. He was reinstated but placed on probation and required to sign a document with very specific performance conditions. *Id.* at 299, 596 A.2d at 1071–72. After violating the terms of this probation, he was terminated, but then brought suit claiming that he was no longer an at-will employee. *Id.* at 300–01, 596 A.2d at 1072. The Court held that the reinstatement agreement that the parties signed to resolve the employee's disciplinary action and govern his probationary status would not convert an at-will employment agreement into a for-cause agreement. *Id.* at 304, 596 A.2d at 1074. Thus, *Dwiggins* involved performance conditions with which an employee must comply to maintain satisfactory probationary status under a *reinstatement agreement*. This is fundamentally distinct from an employee who, free from probationary status, contracts the terms under which her employer will have cause to terminate her employment in an *employment agreement*. Thus, we find no reason to hesitate in relying on the dictum in *Conte* to support our conclusion that the for-cause termination clause in the Employment Agreement removed it from the category of at-will employment.

16

This conclusion is consonant with the position of the parties at the time that the contract was executed. We emphasize that each of the three siblings owned one-third of SSI and also served as a high-level executive. Moreover, they each signed a Stock Purchase Agreement allowing the corporation to acquire their shares at a reduced value if their employment were terminated. A reasonable person in that position could only have thought that the language of the for-cause provision would be operative and provide for the job security stated by its terms. *See supra.* Thus, the only legitimate interpretation of the plain language of the Employment Agreement is that the parties reasonably expected and mutually assented to some degree of job security. This is in contrast to other situations in which the employee has no reasonable expectation of job security. *See Duncan v. St. Joseph's Hosp. and Med. Center*, 183 Ariz. 349, 903 P.2d 1107 (Ariz. Ct. App. 1995) (finding no reasonable expectation of job security from employee handbook or written assurances from employer's president and CEO); *Rowe v. Montgomery Ward & Co.*, 437 Mich. 627, 473 N.W.2d 268 (Mich. 1991) (finding no reasonable expectation of employment from employer's written policy statements or oral statements made during plaintiff's preemployment interview); *Hartbrager v. Frank Paxton Co.*, 115 N.M. 665, 857 P.2d 776 (N.M. 1993) (finding no reasonable expectation of job security from supervisor's statements or from employer's custom of retaining employees for long periods of time); *Reasoner v. Bill Woeste Chevrolet, Inc.*, 134 Ohio App. 3d 196, 730 N.E. 2d 992 (Ohio Ct. App. 1999) (finding no reasonable expectation of job security from supervisor's statements).

17

Yet the conclusion that Adam's Employment Agreement was for-cause, on its own, would leave one key issue unaddressed. As described above, Adam's Employment Agreement did not provide a specific term of employment. Significantly, Section 2.1 of the Employment Agreement referenced an "Exhibit A" that would set forth Adam's salary "for years beyond the first year" of employment, but this exhibit was never created. In other words, SSI had the option of setting a definite term for Adam's employment but chose not to. Thus, the Court is presented with a for-cause contract with an indefinite durational term. Petitioner argues that such a contract must be characterized as providing for lifetime employment and, consequently, tested against the three requirements for a lifetime contract. We move to this contention now.

### *"Continuous For-Cause" v. Lifetime Contracts*

The Court of Special Appeals, in an opinion authored by Judge Kenney, distinguished Adam's Employment Agreement from lifetime employment, characterizing it as "continuous for-cause." *Spacesaver*, 212 Md. App. at 442, 69 A.3d at 507. In drawing this distinction, the court first examined three cases. In *Board of Street Commissioners v. Williams*, 96 Md. 232, 53 A. 923 (1903), a statute governing employment contracts for police officers stated that the officers were "subject to removal for cause," but provided no definite duration of employment. As the court observed,

> [R]emoval for cause is . . . the only limitation fixed by the statute to their tenure. This being so, an appointment is in legal effect an appointment during good behavior, or so long as the appointee is competent to discharge the duties of the office or efficient in the performance of them.

18

*Id.* at 238, 53 A. at 924. This meant that the term was "not, therefore, indefinite, nor [was] it determinable at the mere will of the appointing power." *Id.* Based on that reasoning, the Court held that an appointment that can be terminated only for cause is not an appointment at will, but rather has a definite term. *Id.* at 239, 53 A. at 925.

Similarly, in *County Board of Education v. Cearfoss*, a teacher entered a contract "for an undetermined number of years[.]" 165 Md. 178, 181, 166 A. 723, 733 (1933). After the first or second year of school, either party could terminate the contract with adequate notice, but otherwise, the contract continued "year to year, unless the teacher were suspended or dismissed" for "immorality, dishonesty, intemperance, insubordination, incompetency or willful neglect of duty." *Id.* at 187, 166 A. at 736. The Court of Appeals described this contract as "a tenure to continue until abrogated for sufficient cause." *Id.* at 188, 166 A. at 736.[8]

Drawing from *Williams*, *Cearfoss*, and *Conte*,[9] the Court of Special Appeals stated that "the inclusion of the for-cause provision in Adam's Employment Agreement is sufficient to overcome the presumption that, 'when the length of the employment contract is not specified, the employee is deemed to be . . . at will[.]'" *Spacesaver*, 212 Md. App. at 442, 69 A.3d at 506. In particular, the court relied on the holding of *Williams* that "such

---

[8] Notably, the Court did not hold that the teacher's contract provided for lifetime or permanent employment. *See Cnty. Bd. of Educ. v. Cearfoss*, 165 Md. 178, 188, 166 A. 723, 736 (1933) ("It would not be proper . . . to construe the contract as tending to assure to the teachers a permanency of employment.").

[9] Discussed *supra*.

contracts, although lacking a typical durational term of employment are, nonetheless, 'for a definite term[.]'" *Id.* (quoting *Williams*, 96 Md. at 238–39, 53 A. at 925).

Petitioner challenges any reliance on *Williams* and *Cearfoss*, noting that these cases involved policy concerns surrounding public employees with "tenured" status that did not apply to the private sector. SSI argues, in other words, that in private sector contracts there is no public purpose to "justify a retreat" from the typical presumption of at-will status. We appreciate the contextual differences of these cases. Throughout the cases we have examined, however, courts have repeatedly applied the same contract principles in both the public and private sector contexts. Tenure is just one type of contractual for-cause employment. *See Cearfoss*, 165 Md. at 188, 166 A. at 736 ("Consistently with this policy, the contracts with the teachers evidently designed that they might rely, after the first year, upon a tenure to continue until abrogated for sufficient cause."). Thus, we reject Petitioner's position that a for-cause provision must be supported by a "public purpose" in order to be operative.

The Court of Special Appeals then described these contracts as "essentially continuous for-cause contracts that remain in effect until the employee is removed for cause, or until the employee is no longer 'competent to discharge the duties of the office or efficient in the performance of them.'" *Spacesaver*, 212 Md. App. at 442–43, 69 A.3d at 507 (quoting *Williams*, 96 Md. at 238–39, 53 A. at 924). In this sense, the intermediate

20

appellate court held "continuous for-cause" contracts to be distinct from at-will, satisfaction,[10] and lifetime employment contracts. *Id*. at 443, 69 A.3d at 507.

As both a legal and terminological matter, "continuous for-cause" better describes the nature of Adam's Employment Agreement than the term, "lifetime contract." This Court has previously expressed its assumption that even a so-called "lifetime contract" only "continues to operate as long as the employer remains in the business and has work for the employee and the employee is able and willing to do his work satisfactorily and does not give good cause for his discharge." *Murray*, 198 Md. at 533, 84 A.2d at 873. The same is true of Adam's contract. Surely, Adam's continued employment depended on, in addition to her compliance with the for-cause provisions listed in the Employment Agreement, the

---

[10] A "satisfaction contract" is one "in which the employer, notwithstanding the inclusion of a durational term of employment, expressly reserves the right to terminate if it deems the employee's performance unsatisfactory." *Towson Univ. v. Conte*, 384 Md. 68, 77, 862 A.2d 941, 946 (2004). As we explained in *Ferris v. Polansky*:

> In a contract where the employer agrees to employ another as long as the services are satisfactory, the employer has the right to terminate the contract and discharge the employee, whenever he, the employer, acting in good faith is actually dissatisfied with the employee's work. This applies, even though the parties to the employment contract have stipulated that the contract shall be operative during a definite term, if it provides that the services are to be performed to the satisfaction of the employer.

191 Md. 79, 85–86, 59 A.2d 749, 752 (1948). We agree with the Court of Special Appeals' observation that a satisfaction contract without a durational term of employment is distinct from a lifetime employment contract terminable for cause. *See Spacesaver*, 212 Md. App. 422, 443 n.24, 69 A.3d 494, 507 n.24. In our view, the intermediate appellate court properly stated that under Maryland law, a trial court will evaluate an employer's objective motivation for termination of a lifetime contract, whereas under a satisfaction contract, the jury must focus on the employer's subjective motivation for termination.

21

continued success of SSI's current business and its resulting need for Adam's services.[11]

We see that, to some extent, the so-called "lifetime contract" and "continuous for-cause" contract are similar, and do overlap.

Yet in significant respects, Adam's Employment Agreement is distinct from the alleged "lifetime employment" that was generally rejected by this Court.[12]  The cases in which this Court has wrestled with alleged lifetime employment have arisen from lower-level employees' allegations that someone higher up in a company had given an oral representation that they would have a job "for life."  *See, e.g.*, *Pullman Co. v. Ray*, 201 Md. 268, 271, 94 A.2d 266, 267 (1953) (alleged oral promise of lifetime employment in exchange for forbearance from suit); *Murray*, 198 Md. at 530, 84 A.2d at 872 (alleged oral promise of lifetime employment in exchange for refraining from selling to previous customers for commissions); *King*, 168 Md. at 143, 176 A. at 626 ("an alleged breach of an oral contract of the railroad company to employ the plaintiff for life, in consideration of

---

[11] Surely SSI could change the nature of its business in a way that rendered Adam's services superfluous, and therefore her employment would end.  This would have to be done in good faith, for a legitimate business reason, and not with the motivating intent to rid the company of her services.  *See* James J. O'Malley, "Cause of Action for Wrongful Discharge from Employment in Breach of Contract," 18 *Causes of Action* 229, § 28 (1989) (collecting cases in which courts permitted discharge for legitimate business reasons such as economic difficulties requiring layoffs, employee's department becoming obsolete, and closure of unprofitable plant).

[12] Testimony at the trial court indicated that at least two of the siblings envisioned a lifetime tenure when they signed the Employment Agreement.  Under the objective interpretation of contracts, the court will only look at extrinsic evidence if the contract is found to be ambiguous, a finding that, as we discuss *infra*, we disclaim here.  *See Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 163, 829 A.2d 540, 544 (2003).

his forbearance to sue on a claim for damages from injuries"); *Heckler v. Balt. & O. R. Co.*, 167 Md. 226, 227, 173 A. 12, 13 (1934) (lifetime employment offered as part of a settlement for an employee's injuries). These cases support the proposition that alleged oral contracts for continued employment stand on weaker ground than written contracts. Indeed, although a Maryland appellate case has expressly contemplated the potential that oral representations could support a "lifetime contract,"[13] we have found no Maryland cases actually upholding such alleged oral contracts.

A similar point has been expounded sagely by our sister court in Michigan, which stated:

> [T]his Court [has] recognized "the difficulty in verifying oral promises," *Rowe*, 437 Mich. at 641, 473 N.W.2d [at 273], especially in the employment relations context, because individuals often harbor "optimistic hope of a long relationship" that causes them to misinterpret their employer's oral statements as manifestations of an intention to undertake a commitment in the form of a promise of job security. [*Id.* at 640, 473 N.W.2d at 273]. Accordingly, and in an effort to recognize oral contracts for job security only where the circumstances suggest both parties intended to be bound, *id.* at 636, 473 N.W.2d [at 271], the *Rowe* Court held that "oral statements of job security must be clear and unequivocal to overcome the presumption of employment at will." *Id.* at 645, 473 N.W.2d [at 275].

*Rood v. Gen. Dynamics Corp.*, 444 Mich. 107, 118–19, 507 N.W.2d 591, 598 (Mich. 1993).

Our intermediate appellate court embraced the same wisdom when it observed that

> "[a] promise of permanent or lifetime employment may be nothing more than a casual aside. Or, it may be purely aspirational. The employer may be expressing his hope that a

---

[13] *See Yost v. Early*, 87 Md. App. 364, 383, 589 A.2d 1291, 1300 (1991).

> valued employee will stay with him forever. However, he may not have intended to create a binding agreement."

*Spacesaver*, 212 Md. App. at 444, 69 A.3d at 508 (alteration in original) (quoting *Greene v. Oliver Realty, Inc.*, 363 Pa. Super. 534, 555, 526 A.2d 1192, 1202 (Pa. Super. Ct. 1987)). Based on the above considerations, we have held allegations of lifetime employment subject to a requirement of definiteness. *See supra*; *see also Aberman v. Malden Mills Indus., Inc.*, 414 N.W.2d 769, 771 (Minn. Ct. App. 1987) ("Courts are reluctant to find a lifetime employment contract because such alleged contracts are often 'oral, uncorroborated, vague in important details and highly improbable.'" (quoting *Degen v. Investors Diversified Servs. Inc.*, 260 Minn. 424, 428–29, 110 N.W.2d 863, 866 (Minn. 1961))).

But unlike those cases involving alleged lifetime agreements, in which the lack of definiteness and "verifiability" inherent in oral representations justified a court's skepticism, Adam's Employment Agreement contained an express for-cause provision **in writing**. This provision, in concert with SSI's failure to specify a term of employment on "Exhibit A," cannot but be read to imply a continued period of employment. The Agreement's operative terms are expressed—or in the case of the employment's durational term, omitted—definitively. Therefore, the concerns over its accuracy, probability, and provenance are not present. The contract is clear, as is the fact that the parties assented to it.[14] *See Bracco v. Mich. Tech. Univ.*, 231 Mich. App. 578, 590, 588 N.W.2d 467, 473

---

[14] While the trial court received conflicting evidence that some of the parties thought they were signing a contract providing for life employment, we need not address that

24

(Mich. Ct. App. 1998) ("[O]f central importance . . . is that the employee have "negotiated"

. . . regarding job security. Of equal importance is that the employer *agree* to terminate

only for cause.") (emphasis in original) (footnote omitted). In this context, we refrain from

imposing the additional requirement of special consideration, which evolved from a line of

lifetime employment cases, to contracts of a "continuous for-cause" nature.[15]

In drawing a distinction between lifetime and "continuous for-cause" contracts, we

follow a path laid by other courts. As the United States District Court for the District of

Nevada stated:

> Although employment generally is at-will, "an employer may
> expressly or impliedly agree with an employee that
> employment is to be for an indefinite term and may be
> terminated only for cause or only in accordance with
> established policies or procedures." *D'Angelo* [*v. Gardner*,
> 107 Nev. 704, 712, 819 P.2d 206, 211 (Nev. 1991)]; *see also*
> *Martin* [*v. Sears, Roebuck and Co.*, 111 Nev. 923, 927, 899
> P.2d 551, 554 (Nev. 1995)]. This is known as a "contract of
> continued employment." *D'Angelo,* [107 Nev. at 712,] 819
> P.2d at 211 (quotation marks omitted). Additionally, an
> employer may bind itself to a term of lifetime employment if
> the parties expressly so agree, and consideration is given
> therefor.

---

evidence if the contract itself provides an unambiguous answer. As we conclude, *infra*, the Employment Agreement is unambiguous and provides the answer.

[15] We recognize that the concerns over corporate authority to execute a "continuous for-cause" contract and shareholders' ability to change the management of the corporation could potentially arise in another case. That concern is not present here because the Employment Agreement was identical to the ones signed by the other two shareholders, and all shareholders and directors, including the corporate counsel who was a non-shareholder director, consented to the terms thereof.

25

*Cundiff v. Dollar Loan Center LLC*, 726 F. Supp. 2d 1232, 1237 (D. Nev. 2010); *see also Pine River State Bank v. Mettille*, 333 N.W.2d 622, 628 (Minn. 1983) ("If the parties choose to provide in their employment contract of an indefinite duration for provisions of job security, they should be able to do so.").

In so holding, we signal no retreat from our recognition and veneration of the employment at-will doctrine. This judgment in no way erodes that doctrine, as the presumption for at-will employment persists and is only defeated when the parties explicitly negotiate and provide for a definite term of employment or a clear for-cause provision. We emphasize that in this case, SSI's corporate attorney could easily have kept Adam's employment at-will by inserting an at-will provision in the Employment Agreement, or making sure that no for-cause provision made its way into the contract.

We also reject any contention that the Employee Handbook should change our decision. The Employment Agreement states that SSI's Employee Handbook governs "to the extent not described in this Employment Agreement[.]" It further states that "[i]n the event of a conflict between this Employment Agreement and the employees' handbook or existing practices, the terms of this agreement shall govern." We reject any argument that the two documents, read together, make clear that the contract could be terminated **either**

with or without cause.[16]  It would defy the plain language of the Employment Agreement to hold otherwise.[17]

The same can be said for Petitioner's argument that if the for-cause provision were meant to carry so much weight, the Employment Agreement would have authorized termination "only" for cause.  The parties do not cite, and the Court has not found, any case holding that the inclusion of "may" in a for-cause provision defeats the purpose of that provision.[18]  This argument logically fails, and the trial court was right to reject it.

---

[16] Even if for-cause language in an employee handbook could support a "continuous for-cause" employment agreement, we would carefully examine the handbook to see if other language therein was inconsistent with such conclusion.  For example, if the handbook also stated that employment was at-will or expressly provided that the handbook was not a contract, we would consider that language as negating any claim that the handbook created "continuous for-cause" or lifetime employment. *See Dell v. Montgomery Ward and Co.*, 811 F.2d 970, 972–73 (1987) (holding that at-will language in employee handbook stating that "[e]mployment . . . is for no definite period and may . . . be terminated at any time by the company or by an employee, *with or without cause, and without any previous notice*" prevailed over due process procedures provided in the same handbook) (emphasis in original); *Castiglione v. Johns Hopkins Hosp.*, 69 Md. App. 325, 329, 517 A.2d 786, 787 (1986) (holding that at-will language in employee handbook stating "this handbook does not constitute an express or implied contract" prevailed over annual performance appraisals provided in the same handbook).

[17] SSI's argument that the for-cause provision was included in the Employment Agreement merely to help effectuate the mirror provisions in the Stock Purchase Agreement is not availing.  SSI could easily have terminated Adam without including a for-cause provision in the Employment Agreement, as before Ellentuck's revisions, the contract would have been at-will.

[18] We are not aware of any record material that suggests Adam's employment was subject to a for-cause provision, or was specified for a definite term, before the Employment Agreement was executed.

**CONCLUSION**

For the reasons stated above, we agree with the Court of Special Appeals that the Employment Agreement should not be interpreted as at-will employment. We distinguish this Employment Agreement from those alleged oral lifetime employment contracts that were consistently rejected by Maryland courts. It was a formal written employment contract executed by each of the three shareholders and did not lack for clarity in terms. We consider the best moniker for this type of contract to be "continuous for-cause" employment. We affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**