*Swift v. University of Maryland, College Park*, No. 1162, September Term 2017. Opinion by Nazarian, J.

**LABOR AND EMPLOYMENT – TERMINATION – EMPLOYMENT AT-WILL**

An employer may, by agreement, limit its right to terminate at-will employees. When it does, the language of the operable agreements controls, whether the agreement is bargained collectively or privately.

**CONTRACTS – LANGUAGE OF CONTRACT – INTERPRETATION**

An employer's agreement not to discipline a group of employees without cause did not abrogate an existing and separate policy permitting termination with notice.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1162

September Term, 2017

_____

THOMAS SWIFT

v.

UNIVERSITY OF MARYLAND,
COLLEGE PARK

_____

Nazarian,
Arthur,
Shaw Geter,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: November 2, 2018

\* Fader, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Maryland Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document ˮ authentic.



Suzanne C. Johnson, Acting Clerk

This case turns on whether the University of Maryland, College Park (the "University") could terminate Thomas Swift, a regular, exempt employee and a member of the American Federation of State, County, and Municipal Employees (the "Union") with notice and without cause. The University's authority to do so depends on whether the collective bargaining agreement between the Union and the University abrogates the University's employment policy, as Mr. Swift argues, or whether the two can exist in parallel, as the University contends.

On December 13, 2013, the University notified Mr. Swift that it was terminating him without cause, and, pursuant to Board of Regents Policy, VII-1.22: Policy on Separation for Regular Exempt Employees (the "Policy"), gave him six months' notice (and pay) before the termination took effect. One week later, Mr. Swift filed a grievance pursuant to Maryland Code, § 13-203(b)(1) of the Education Article ("ED"). The University issued a Step Two opinion and affirmed Mr. Swift's termination. Mr. Swift submitted his grievance to advisory arbitration and the arbitrator ruled in his favor. But the University delegated the final decision to an administrative law judge ("ALJ"), who upheld the termination. Mr. Swift sought judicial review in the Circuit Court for Prince George's County, which affirmed. He argues on appeal that, as a matter of statutory law and general principles of labor law, the collective bargaining agreement and University policies can't coexist. We disagree and affirm.

## I.    BACKGROUND

On August 27, 2007, Mr. Swift began working in the University's School of Architecture as a Model Shop Supervisor. In that role, he managed the University wood

shop and supported the School of Architecture's Studio Teaching Program. He was classified as a regular, full-time exempt employee and, therefore, a member of the Union and a party to the collective bargaining agreements between the University and the Union.

The collective bargaining agreement at issue is the Memorandum of Understanding for Exempt Employees (the "MOU"). The MOU has been modified several times; the most recent version—the version in effect when Mr. Swift was terminated—was updated in 2010. Two portions of the MOU are relevant to this case. *First*, since 2004, the MOU (Article 1, Section 3(A)) has contained language recognizing that University employment policies remain in effect unless they conflict with the MOU:

> Except as specifically provided for in this Memorandum of Understanding, all University System of Maryland and University of Maryland, College Park policies, procedures, rules, practices, and conditions of employment governing bargaining unit employees ("Policy") are and shall remain in full force and effect. Where a portion of any existing Policy is modified by this MOU, the remainder of that Policy not in conflict with the MOU remains in full force and effect.

*Second*, Article 15 of the MOU, entitled "Disciplinary Actions," contains a "progressive discipline" program. The opening section states that "[t]he University subscribes to the tenets of progressive discipline, where appropriate," and, a sentence later, that "[n]o employee shall be disciplined without cause." Subsequent sections define the forms of discipline, the employee's right to union representation, the University's responsibilities, and the time limits within which the University must impose the various forms of discipline. Section 5, which defines the time schedule, also provides that the MOU

does not apply to the notice provisions of the Policy or to another section of the MOU not applicable here:

> [T]his schedule shall have no applicability to either separation under the Notice Termination provisions of Board of Regents Policy VII-1.22 or Rejections on Probation under that Policy or Article 8 of this MOU.

The University employment policy at issue in this case is the one referenced in the Board of Regents Policy, VII-1.22. In a section with the heading "General Notice," the Policy describes regular, exempt employees as "at-will":

> Employment for regular USM employees in exempt positions is on at *at-will basis*. This means that, subject to applicable laws and policies*, the employment relationship may be terminated at any time by either the employee or the University*, consistent with [the separation provision] of this policy.

(Emphasis added.) Then, in a section entitled "Period of Notice," the Policy states that "[a]n employee may be involuntarily separated and shall be provided with a defined period of notice." The employee's years of service determine the length of the notice period, which for Mr. Swift, who had six years of service, was six months. The Policy allows the University to place employees on paid administrative leave during the notice period or to assign them alternative duties or responsibilities.[1]

---

[1] The Policy also carves out an exception to the notice requirement: "if the employee is to be terminated for . . . moral turpitude, incompetency, willful neglect of duty, illegal actions, gross misconduct, severe safety violations, failure to accept reassignment, or medical condition causing inability to perform essential job duties with reasonable accommodations as required by law." That provision is not at issue here.

On September 18, 2013, the University sent Mr. Swift a "counseling letter" warning him of potentially impending "administrative and/or disciplinary" action, including termination of employment, if his attendance and work performance did not improve. The letter set out expectations for specific areas of improvement. But fewer than three months later, on December 13, 2013, Mr. Swift received a termination letter. The letter did not specify a reason for the termination, but cited Policy VII-1.22. The letter informed Mr. Swift that he was being placed on administrative leave and would be paid during the full six-month notice period, which would end on June 13, 2014. There is no dispute that the University complied with those terms.

Mr. Swift filed a timely grievance and argued that his termination failed to comply with the MOU's progressive disciplinary process. The University rejected the grievance, and Mr. Swift submitted the case to advisory arbitration. In a decision dated April 7, 2016, the arbitrator agreed with Mr. Swift and recommended that the University reinstate him with back pay and benefits. The University's Chancellor delegated his authority to make a final agency decision to the Office of Administrative Hearings, and the parties submitted the arbitration award and eleven exhibits to an ALJ, who held that the University properly terminated Mr. Swift on notice under the Policy. The ALJ also rejected Mr. Swift's contention that ED § 13-205 entitled him to due process protections afforded to employees charged for removal.

Mr. Swift sought judicial review of the ALJ's order. The Circuit Court for Prince George's County heard the case on June 15, 2017, and issued a written opinion affirming the ALJ's decision and interpretation of the MOU. Mr. Swift appealed.

4

## II.    DISCUSSION

Mr. Swift raises two questions in his brief,[2] but they boil down to whether Article 15 of the MOU contradicts, and effectively abrogates, Board of Regents Policy VII-1.22. Mr. Swift poses the question as binary: "[f]or-cause employment and at-will employment are mutually exclusive," he says, and the University's entry into a collective bargaining agreement with the Union supersedes any University employment policies not contained in the MOU. The University points to the documents themselves: it argues that Article 15 of the MOU "applies only to 'disciplinary actions'" and does not "purport to cover, or impose requirements with respect to, all terminations of employment," such as the University's option to terminate with notice under Policy VII-1.22. Both the ALJ and the circuit court agreed with the University.

Our review of this case is governed by Maryland Code (2014 Repl. Vol.), § 10-222(h)(3) of the State Government Article ("SG"). We review administrative agency decisions[3] directly and look through the circuit court's ruling. *Marks v. Criminal Injuries Compensation Bd.*, 196 Md. App. 37, 55 (2010). We apply the same standard of review as

---

[2] Mr. Swift listed the following Questions Presented:

> 1. Does a collective bargaining agreement that directs that an employee may only be disciplined for cause abrogate at-will employment?
>
> 2. Does a right to process for a public employee abrogate at-will employment?

[3] Citing the expertise of labor arbitrators in interpreting and applying collective bargaining agreements, Mr. Swift urges us to review and defer to the arbitrator's ruling rather than the ALJ's decision. But the arbitrator's decision was not the final agency action. To the contrary, "[t]he arbitration award is advisory to the Chancellor or the administrative law judge, as appropriate, and an additional appeal shall not be considered." ED § 13-203(d).

5

the circuit court, and we defer to administrative agency factual findings that are supported by substantial evidence in the record. *Uninsured Employers' Fund v. Pennel*, 133 Md. App. 279, 288 (2000). We may reverse or modify the decision of the administrative agency only if we find that "any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision . . . is unsupported by . . . evidence; fails to reasonably state the basis for the termination [of employment] . . . ; or is arbitrary or capricious." SG § 10-222(h)(3)(v–vii). And where there is clear legal error, we owe the agency no deference at all. *Eastern Outdoor Advert. Co. v. Mayor and City Council of Balt.*, 128 Md. App. 494, 514 (1999).

Mr. Swift argues that the Union "would never, and could never," allow for the termination of employees in any way other than "for cause," and that Article 15 of the MOU "provid[es] job security to employees." Citing legislation authorizing State employees to bargain collectively and general principles of labor law, he argues that an employee cannot be both "at-will" and "for-cause," and that therefore the University could not terminate Mr. Swift without affording him the process due to employees terminated for cause. The University counters that there is no conflict between discipline, which is addressed in the MOU, and notice termination, defined in the Policy, which allows the University to terminate employees without cause but requires notice and, during the notice period, pay. Not only are the concepts compatible, the University says, but Article 1, Section 3 of the MOU acknowledges that University policies remain in full force and effect unless they conflict, and Article 15, Section 5 of the MOU refers specifically to (and distinguishes) the notice termination provisions of the Policy.

6

We agree with the University. In Maryland, "[t]here is a presumption . . . that an employment relationship is 'at-will'—*i.e.* terminable by either party at any time, with or without cause." *Bontempo v. Lare*, 444 Md. 344, 363–64 (2015) (*citing Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 11 (2014)).[4] This presumption can, of course, be altered by agreement. *Id.* ("Nothing . . . precludes parties from contracting otherwise, either by specifying a clear duration of employment or by spelling out reasons for termination, such as 'just cause.'"); *Suburban Hosp., Inc. v. Dwiggins*, 324 Md. 294, 306 (1991). Collective bargaining is one, but not the only, example of such an agreement.

Although the University and the Union obviously have agreed to alter the default employer-employee relationship for regular, exempt employees, the mere existence of an agreement doesn't transform at-will employees into for-cause employees for all purposes. Instead, the agreement binds the employer to the agreed protections, and the documents, not the label, control. *Dwiggins*, 324 Md. at 307 ("By creating and disseminating its grievance procedures, [the employer] promised merely that they would be followed," but the existence of such procedures did not change the employee's at-will status); *see Carnes v. Parker*, 922 F.2d 1506, 1511 (10th Cir. 1991) ("Although procedural protections themselves are not sufficient to create a property interest in continued employment, they

---

[4] This presumption is subject to Constitutional, statutory, and common law limitations. *See, e.g.*, Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352, as amended), 42 U.S.C. §§ 2000e *et seq.*; *Adler v. Am. Standard*, 291 Md. 31, 42 (1981) (recognizing common law cause of action for wrongful discharge when termination violates clear public policy); Md. Code (1991, 2014 Repl. Vol.), § 9-1105 of the Labor and Employment Article (precluding employers from firing at-will employees for filing a workers' compensation claim).

can sustain an entitlement to the procedures themselves."). The terms of the resulting employer-employee relationship are a function of the operative writings, and no principle of labor law (or any other authority we have found) puts the University, or us, to the false choice of labeling Mr. Swift woodenly as either a fully "at-will" employee or fully "for-cause" employee.

This brings us back to the language of the MOU and the Policy, and we see no conflict between the MOU's disciplinary provisions and the Policy's notice termination provision. In Article 1, Section 3, the MOU expressly recognizes that its terms function in parallel with non-conflicting University employment policies. The MOU's distinction, in Article 15, Section 5, between the time periods for progressive discipline from the notice termination period similarly recognizes different tracks for notice terminations and discipline. The statement in the MOU that "[n]o employee shall be disciplined without cause," MOU Article 15, Section 1, bolsters this point: the University cannot institute *disciplinary* action without cause, but that doesn't preclude notice termination, which affords an employee far greater notice and protection than a pure at-will termination would. To be sure, the counseling letter that the University sent to Mr. Swift in September 2013 indicated that the University was unhappy with his performance and that it was starting down a path toward disciplining him. But the agreement authorized the University to change course and to exchange a potentially lengthy and uncertain disciplinary process for the certainty of Mr. Swift's departure with six months of paid administrative leave.

Mr. Swift argues as well that ED § 13-205(a)[5] requires the University to file charges before it can suspend any regular, exempt employees pending termination. But again, notice termination isn't discipline. The University didn't pursue charges against Mr. Swift—it terminated him with notice under a separate, parallel, and valid employment policy, and it was not required to follow the statutory procedures for suspension of employees under charges for removal.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**

---

[5] ED § 13-205 defines the grievance procedures for University of Maryland Classified Employees who receive charges for removal from their position.